IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| The Satanic Temple, Inc., and Mortimer Adramelech,<br><br>Plaintiffs,<br><br>vs.<br><br>Mark Campbell, Director of the Iowa Department of Administrative Services, *in his official and individual capacities*, Adam Steen, former Director of the Iowa Department of Administrative Services, *in his individual capacity,* and the Iowa Department of Administrative Services,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:26-cv-336<br><br>**CIVIL RIGHTS COMPLAINT FOR DECLARATORY AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DAMAGES** |

Plaintiffs, The Satanic Temple, Inc. ("TST") and Mortimer Adramelech ("Adramelech"), an individual who is a member and minister of the Iowa congregation of The Satanic Temple, (collectively, "TST-Iowa") bring this Complaint against Defendant Mark Campbell ("Campbell") in his official and individual capacities as Director of the Iowa Department of Administrative Services ("IDAS") for the ongoing violation of their constitutional rights under the First and Fourteenth Amendments' Free Speech and Free Exercise clauses, the Fourteenth Amendment's Equal Protection Clause, and for the ongoing violation of their statutory rights under the Iowa Civil Rights Act ("ICRA") and the Iowa Religious Freedom Restoration Act ("Iowa RFRA"). TST-Iowa also brings this Complaint as against Adam Steen ("Steen") in his individual capacity only. Pursuant to this Court's supplemental jurisdiction, TST-Iowa brings this action against Campbell, Steen, and the Iowa Department of Services for the ongoing violation of their statutory rights under

the ICRA and the Iowa RFRA. Contemporaneously with this Complaint, Plaintiffs are submitting a Motion for Preliminary Injunction, accompanied by a Brief and attachments in support. Plaintiff Adramelech is also contemporaneously submitting a Motion to Proceed Under Pseudonym, accompanied by a Brief and attachments in support.[1]

## PRELIMINARY STATEMENT

1. Plaintiff, The Satanic Temple, Inc. ("TST"), is a federally recognized non-theistic religious corporation with a presence in all fifty States, including Iowa.

2. Plaintiff Mortimer Adramelech ("Adramelech") is an individual who is a member and minister of The Satanic Temple congregation in Iowa.

3. Plaintiffs (collectively "TST-Iowa") have submitted three applications to host public events at the Rotunda.

4. On October 7, 2024, TST-Iowa properly submitted a Capitol Building Application to hold an event in the 1st Floor Rotunda–East entitled TST Iowa Holiday Display Day (the "2024 Event") on December 14, 2024. (PI Ex. 1 ¶ 19; PI Ex. 2 at 41; PI Ex. 3 at 41).

5. On December 10, 2024, Defendant Steen, then the director of IDAS, denied the application, citing section 5.15 of the Memorandum of Understanding "MOU". (PI Ex. 1 ¶ 25; PI Ex. 2 at 92; PI Ex. 3 at 92).

6. In a subsequent email, Steen explained that the denial was because "cumulative circumstances" resulting from the "presence of minors, coupled with the anticipation of costumes

[1] Plaintiff Mortimer Adramelech has contemporaneously filed a motion to proceed under pseudonym. Mortimer Adramelech is the religious pseudonym that Plaintiff has adopted to protect his identity. To protect his privacy pending consideration of this Complaint, Adramelech has used this pseudonym in this Complaint and in all other initial filings.

with sticks used as weapons on children, positions the event to be harmful to minors contrary to MOU section 5.15." (PI Ex. 1 ¶ 27; PI Ex. 2 at 95-96; PI Ex. 3 at 95-96).

7. On September 29, 2025, TST-Iowa properly submitted a Capitol Building Application to hold an event in the 1st Floor Rotunda–East entitled TST Iowa Holiday Display Day (the "2025 Event") on December 13, 2025. (PI Ex.1 ¶ 35; PI Ex. 4 at 10; PI Ex. 5 at 10).

8. On November 24, 2025, Defendant Campbell, the current director of IDAS, denied TST-Iowa's 2025 holiday application. He provided no basis for the denial. (PI Ex. 1 ¶ 39; PI Ex. 4 at 46; PI Ex. 5 at 46).

9. On March 7, 2026, TST-Iowa properly submitted a Capitol Building Application to hold an event in the 1st Floor Rotunda–East entitled TST Iowa Holiday Display Day (the "2026 Event") on December 12, 2026, to the Capitol Complex events office (capitol.complex.events@iowa.gov). (PI Ex.1 ¶ 41; PI Ex. 6 at 12; PI Ex. 7 at 12).

10. The 2026 Event application has been pending for 159 days as of this filing. Defendant Campbell, as Director of IDAS, has unduly delayed processing of the 2026 holiday application.

11. The First and Fourteenth Amendments protect TST-Iowa's right to expression. Defendants' ongoing exclusion of TST-Iowa from engaging in protected religious speech, grounded in their beliefs of Satanism and the governing tenets of TST, at the Rotunda is based on their religious viewpoint. This exclusion constitutes impermissible viewpoint discrimination and is presumptively unconstitutional. The exclusion is also a content-based restriction and is not narrowly tailored to, or the least restrictive means of, achieving a compelling interest. TST-Iowa attempted to address Defendants' purported concerns for the safety of minors, but Defendants ignored these attempts. Instead, Defendants excluded TST-Iowa from the Rotunda for two years'

worth of events and continue to do so, on an ongoing basis. Defendants have violated and continue to violate Plaintiffs' free speech rights under the First and Fourteenth Amendments.

12. The First and Fourteenth Amendments and the Iowa Religious Freedom Restoration Act ("Iowa RFRA") protect TST-Iowa's right to freely exercise their religion. By denying TST-Iowa's applications to hold an event at the Rotunda because of their religious beliefs, Defendants have violated their clearly established constitutional and statutory right to the free exercise of religion, and this exclusion cannot survive strict scrutiny.

13. Additionally, by allowing other religious events, but prohibiting TST-Iowa's events, Defendants have engaged in unlawful disparate treatment against TST-Iowa based on their religion, protected speech, and membership in a suspect class. This exclusion cannot survive strict scrutiny and violates the Equal Protection Clause of the Fourteenth Amendment.

14. Finally, Defendants have also violated TST-Iowa's statutory rights under the Iowa Civil Rights Act ("ICRA"). For the past two years and on an ongoing basis, Defendants have discriminated against TST-Iowa by denying them services and public accommodations, both (1) on the basis of their religion and/or their perception of their religion and (2) in retaliation for their prior reports of discrimination.

15. There is a pattern and practice of Defendants delaying, denying, or failing to respond to applications by the Plaintiffs. There is no reason to expect this pattern to change, or expect that Defendants will actually allow TST-Iowa to hold their 2026 holiday event at the Rotunda absent intervention by this Court.

## JURISDICTION

16. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the First and Fourteenth Amendments to the United States

Constitution and 42 U.S.C. §§ 1983 and 1988. Because Plaintiff's claims arise under the United States Constitution and federal law, this Court has jurisdiction to declare the rights of the parties and to grant all further relief it finds necessary and proper pursuant to 28 U.S.C. §§ 2201- 2202.

17. This Court also has supplemental jurisdiction over Plaintiffs' Iowa Civil Rights Act claims and Iowa Religious Freedom Restoration Act claims because they are so related to the claims over which the court has federal question jurisdiction that it forms part of the same case or controversy. *See* 28 U.S.C. § 1367(a).

**VENUE**

18. Venue is proper in this court under 28 USC § 1391(b)(1) because the events giving rise to Plaintiffs' claims herein occurred and are occurring in Polk County, Iowa.

**PARTIES**

19. The Plaintiff, **The Satanic Temple, Inc.** (the "TST"), is a non-theistic religious corporation with its principal place of business in Salem, Massachusetts. TST is recognized by the IRS as a "church" under 26 USC § 170(b)(1)(A)(i). TST has established its status as a sincere and bona fide religion. *Satanic Temple v. City of Scottsdale*, No. CV18-00621-PHX-DGC, 2020 WL 587882 (D. Ariz. Feb. 6, 2020); *Cave v. Jester*, 829 F. Supp. 3d 582, 669-671 (E.D. Ark. 2026); *Satanic Temple, Inc. v. Saucon Valley Sch. Dist.*, 671 F. Supp. 3d 555, 559 (E.D. Pa. 2023).

20. TST is further recognized as a bona fide religion entitled to equal treatment under the law in academic literature,[2] and is a recognized religion in popular culture.[3]

21. As of July 17, 2026, TST's registered membership exceeds 600,000 and can be found in every State, including Iowa. TST's membership is not required to register, and those who register do not have to provide geographic information. (PI Ex.1 ¶ 7(f).) Of those registered members who have provided geographic information, more than 5,000 indicate an Iowa residence. *Id.*

22. TST venerates (but does not worship) the biblical adversary as a promethean icon against tyranny. TST and its membership take inspiration from *Paradise Lost* and other similar works in which Satan is portrayed as a revolutionary antihero who stood up against impossible odds to seek justice and egalitarianism for himself and others. TST propagates its Seven Tenets:

a. One should strive to act with compassion and empathy toward all creatures in accordance with reason.
b. The struggle for justice is an ongoing and necessary pursuit that should prevail over laws and institutions.
c. One's body is inviolable, subject to one's own will alone.
d. The freedoms of others should be respected, including the freedom to offend. To willfully and unjustly encroach upon the freedoms of another is to forgo one's own.
e. Beliefs should conform to one's best scientific understanding of the world. One should take care never to distort scientific facts to fit one's beliefs.
f. People are fallible. If one makes a mistake, one should do one's best to rectify it and resolve any harm that might have been caused.

[2] *e.g.*, Joseph Laycock, *Speak of the Devil: How The Satanic Temple is Changing the Way We Talk about Religion* (Oxford University Press, 2020); Angela R. Pruitt, *Maybe Today, Satan: A Christian Supreme Court, Unbalanced Religious Clauses, and the Rise of the Satanic Temple*, 26 J. Gender Race & Just. 271 (2023); *Pandora's Box of Religious Exemptions*, 136 Harv. L. Rev. 1178 (2023); Allen Rostron, *Saints, Satanists, and Religious Public Charter Schools*, 59 Tulsa L. Rev. 451 (2024).

[3] *See e.g.*, Penny Lane, *Hail Satan?* (Magnolia Films, 2019); La Carmina, *The Little Book of Satanism: A Guide to Satanic History, Culture, and Wisdom* (Ulysses Press, 2022).

g. Every tenet is a guiding principle designed to inspire nobility in action and thought. The spirit of compassion, wisdom, and justice should always prevail over the written or spoken word.[4]

23. Plaintiff "**Mortimer Adramelech"** is an individual who is a member and a minister of The Satanic Temple, and was at all times material hereto a citizen and resident of Iowa. Adramelech sincerely holds the beliefs and practices espoused by The Satanic Temple.

24. Defendant **Mark Campbell** is the Director of the Defendant Iowa Department of Administrative Services, and is responsible for its acts and omissions.[5] In his role at IDAS, he is responsible for evaluating applications by members of the public for use of the common areas in the Capitol Building or the Capitol Complex for public events. He began his term on October 6, 2025, and denied Plaintiff's application in 2025, and has caused undue delay in the evaluation of Plaintiff's 2026 application. He is sued in his official and individual capacities. Defendant Campbell is a governmental actor and/or employee acting under color of State law for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment; he is therefore liable for the violation of Plaintiffs' First Amendment and Fourteenth Amendment rights under 42 U.S.C. § 1983.

25. Defendant **Adam Steen** was the former director of the Iowa Department of Administrative Services. In his role at IDAS, he was responsible for evaluating applications by members of the public for use of the common areas in the Capitol Building and the Capitol Complex

---

[4] https://thesatanictemple.com/pages/about-us (last visited July 1, 2026).

[5] An official-capacity suit is a suit against a government entity "in all respects other than name," *Banks v. Slay*, 875 F.3d 876, 881 (8th Cir. 2017) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); see also, *Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir. 1994) ("[A]ny naming of the County in the heading of the [official-capacity] complaint was ... redundant."); *see also, Nix v. Norman*, 879 F.2d 429, 432–33 (8th Cir. 1989) (noting that "state officials sued in their official capacities for injunctive relief are 'persons' under section 1983 because official-capacity actions for prospective relief are not treated as actions against the state" (citing *Will v. Mich. Dep't of State Police.*, 491 U.S. 58 (1989)).

for public events. He was the director until October 6, 2025, and denied Plaintiff's 2024 application. He is sued in his individual capacity.

26. Defendant **Iowa Department of Administrative Services** is a division of the State of Iowa with its principal administrative offices located in Des Moines, Polk County, Iowa. IDAS is responsible for reviewing applications by members of the public for use of the common areas in the Capitol Building or the Capitol Complex for public events.

## FACTUAL BACKGROUND

### Event Application Process

27. Capitol Complex Events, under IDAS, is responsible for the following functions for the enterprise: parking and building access; coordination of events in the public area of the Capitol, in other buildings on the Capitol Complex (excluding the historical building), and on the Capitol Complex grounds; and providing general information regarding the buildings and grounds on the Capitol Complex. Iowa Administrative Code, 11-1.4(8A)

28. The Capitol Complex, including the Capitol Rotunda at issue in this case, is a public forum open to the public for expressive activity.

29. State agencies or the general public may request use of Capitol Complex facilities, grounds, or parking lots for public events by completing an application on the department website (das.iowa.gov). (Iowa Admin Code r.11-100.4(4)).

30. Per the IDAS website, applications are required to be submitted no fewer than 30 calendar days prior to the requested event date and no earlier than one year prior to the event date. (PI Ex. 16).

31. During the time of the applications at issue, applicants were required to submit their application directly to capitol.complex.events@das.iowa.gov. *Id.*

32. These applications were initially received and reviewed by the Capitol Events Coordinator, Suzy Trotter, who monitored the email during the relevant time.

33. Trotter generally responded to applicants within 24-48 hours, usually informing them that the event had been placed on the calendar and providing them with a memorandum of understanding ("MOU"), but occasionally asking for further information. (PI Ex. 18).

34. The Director of IDAS has the final decision-making authority on applications by members of the public to host events at the Capitol. (Iowa Admin Code r.11-100.4(4)).

35. The director may refuse to allow use of the facilities that, in the director's judgment, would be disruptive of official state business or of the public health, safety and welfare, or is inconsistent with subrule 100.4(4).

36. The director may also consider such factors as recommendations of the department of public safety, previous experience with the requesting group or other events similar to that requested. Iowa Admin Code r.11-100.4(5).

**2023 Holiday Event, 2024 Paradise Lost Event, and Policy Change**

37. In early December 2023, TST-Iowa participated in a two-week holiday display at the Iowa Capitol Complex. (PI Ex. 1 ¶ 9).

38. Other participants included various other religions, which displayed their own winter holiday displays. In addition to nativity scenes, Christmas trees, and menorahs, another participant in the forum was the Freedom From Religion Foundation (a state/church separation public advocacy group), which displayed Benjamin Franklin, Thomas Jefferson, George Washington, and the Statue of Liberty gazing at a manger with a leaflet representing the Bill of Rights. (PI Ex. 1 ¶ 9).

39. TST-Iowa's holiday display at the Iowa Capitol Rotunda was destroyed by an individual who admitted that he did so because of the religious beliefs of the organization, referring to his actions as "Christian civil disobedience." (PI Ex. 1 ¶ 11). He was charged with third-degree criminal mischief and raised more than $134,000 in aid of his legal defense. *Id.* Five months later, he entered a negotiated plea of guilty in return for a recommended sentence of probation, a civil penalty, and restitution to TST's Iowa Congregation in compensation for the destroyed display. *Id.*

40. On July 12, 2024, TST-Iowa applied to hold a four-day reading marathon event of Paradise Lost by John Milton, a core Satanic religious text. (PI Ex. 1 ¶ 14; PI Ex. 2 at 18; PI Ex. 3 at 18).

41. Defendants initially added the event to the Capitol Complex Event Calendar.

42. However, on July 26, 2024, exactly two weeks after TST-Iowa submitted the application, Defendants changed their events policy to prohibit multi-day events and to prohibit organizations from holding more than one event per calendar year. (PI Ex. 1 ¶ 15).

43. Defendants retroactively applied this policy change to Plaintiffs' event application. *Id.*

44. On July 29, 2024, TST-Iowa received the MOU for the Paradise Lost event, which reflected the new policy and approved only the first day of the four-day event. (PI Ex. 1 ¶ 15; PI Ex. 2 at 23; PI Ex. 3 at 23).

45. Defendants refused to permit their multi-day event and confirmed that if they held the (now one-day) event, they would be prohibited from holding an event or display during the holiday season.

46. During this time, Steen was the director of IDAS, and he had final decision-making authority over event applications.

47. Because of this policy change, TST-Iowa did not agree to the MOU and withdrew their Paradise Lost event application so that they could still hold their holiday event later in the year. (PI Ex. 1 ¶ 18).

48. Steen has made several public comments indicating this policy was changed specifically to prevent TST-Iowa from hosting events at the Capitol Building.

49. On October 17, 2025, he stated: "I was the guy at the Capitol when the Baphomet Satanic statue was in there," Steen said. "I had several conversations with several people that led us to, ultimately, not fight the 'free speech' aspect of (that display). "But I'm also the guy that changed the policy to make sure that we weren't going to lose a 'free speech' argument, and I'm now being sued by the Satanists for that." (PI Ex. 1 ¶ 34(b); PI Ex. 2 at 111; PI Ex. 3 at 111).

50. At a campaign event on May 25th, 2026, Steen specifically discussed The Satanic Temple's application and stated :

> "You don't even have to stand near…your display. And I'm like, well, that's a very terrible policy. It leaves us exposed to a lot of different things. And sure enough, the Satanic Temple shows up, and they reserve space at the capital for the Baphomet statue. It's the…devil goat thing. And I called the attorney general's office. I called the governor's office. I called the leadership of the House and the Senate. We met in a boardroom, and I said, 'Here we go.' Because we didn't get that policy change. We're now exposed…And so I said, 'Here's the deal, guys. I am willing to deny this. I'm willing to deny it, but we're going to…lose because we have a terrible policy in place.' I said, 'Or I can grin and bear it, and we can let this thing be displayed for two weeks, but we're changing the policy'...We changed the policy. I took policy from Florida. I took policy from Texas. We put it into one. I gave the DAS director, who I was at the time, discretion to determine if something was harmful to minors or obscene material. I gave myself the ability to do that. We actually had a tight policy. And you know what happened? The next thing that was requested was an all-ages, family-friendly drag show. I denied that per the policy. Didn't get sued for that. The…Satanic Temple shows up. They requested a 3-day reading of Paradise Lost. I had taken the policy and crammed it down to a one-day display. So, you couldn't display anything for 14 days anymore. It had to be one day. So, they came back– 3-day reading of Paradise Lost. Nope."

(PI Ex. 2 at 140-41; PI Ex. 3 at 140-41; The Gazette, *Adam Steen talks about addressing request for displays at the Iowa Capitol in past role*, YouTube (May 26, 2026),

https://www.youtube.com/watch?v=CH_zjlcF-6A; Erin Murphy, *Steen expects low turnout*, targets late-deciding Iowa voters, The Gazette (May 26, 2026), https://www.thegazette.com/news/elections/state/steen-expects-low-turnout-target s-late-deciding-iowa-voters/article_996e1b37-271d-4ec9-935b-64c483d5024e.html).

**2024 Holiday Event Denial**

51. On October 7, 2024, TST-Iowa properly submitted a Capitol Building Application to hold an event in the 1st Floor Rotunda–East entitled TST Iowa Holiday Display Day (the "2024 Event") on December 14, 2024. (PI Ex. 1 ¶ 19; PI Ex. 2 at 41; PI Ex. 3 at 41).

52. In the event application, the 2024 Event was described as follows: "TST Iowa's holiday display will include an itinerary for the day with ritual, Krampus costumes, caroling, and other family-friendly activities such as coloring pages, and make and take ornaments. Everything will be family-friendly, and our display will be attended to by at least one member of our congregation at all times." *Id.*

53. Adam Steen was the director of IDAS at this time and had ultimate decision-making authority over TST-Iowa's application.

54. On October 7, 2024, Suzy Trotter, the Capitol Events Coordinator, confirmed via email that the event was added to the Capitol Events Calendar and sent a Memorandum of Understanding to be completed. (PI Ex. 1 ¶ 19; PI Ex. 2 at 30, 48-54; PI Ex. 3 at 30, 48-54).

55. On October 21, 2024, TST-Iowa responded and provided the signed MOU. (PI Ex. 1 ¶ 19; PI Ex. 2 at 31; PI Ex. 3 at 31).

56. On November 4, 2024, and November 13, 2024, TST-Iowa sent follow-up emails to confirm the status of their application. (PI Ex. 1 ¶ 20; PI Ex. 2 at 32-33; PI Ex. 3 at 32-33).

57. It was not until December 3, 2024, nearly two months after they had submitted the application, that IDAS responded and requested additional information about the 2024 Event. (PI Ex. 1 ¶ 22; PI Ex. 2 at 33; PI Ex. 3 at 33).

58. On December 6, 2024, TST-Iowa responded promptly with the requested information, including a finalized song list, images of the make-and-take ornaments, coloring pages, and anticipated costumes, further details of the costume contest, and a detailed description of the ritual to be performed, a procession to the display, carrying a veiled, flameless candle, an invocation celebrating the light and the night, the unveiling of the flameless candle, and the conclusion. (PI Ex. 1 ¶ 23; PI Ex. 2 at 34-35, 66-74; PI Ex. 3 at 34-35, 66-74).

59. TST-Iowa was responsive and cooperative.

60. On December 9, Jacob Nicholsen, Chief Operating Officer at the Iowa Governor's Office ("IGOV"), texted Director Steen and asked whether IDAS had received the additional information "from the group requesting the event on the 14th". (PI Ex. 1 ¶ 24; PI Ex. 2 at 76; PI Ex. 3 at 76).

61. Upon learning that IDAS had received the additional information, IGOV invited Steen to IGOV's offices, and they began coordinating the drafting of a "Legally Appropriate Statement" to share in response to anticipated media requests, called "Satanic Temple denial statement." (PI Ex. 1 ¶ 24; PI Ex. 2 at 80; PI Ex. 3 at 80).

62. On December 10, 2024, Steen emailed TST-Iowa and stated, "The request for space in the Capitol Rotunda is not approved," citing section 5.15 of the MOU, which states:

> 5.15. Additional Limitation. Because the Capitol Complex is often a destination for children (persons under the age of eighteen) learning about their State government, visual displays, sounds, and other actions that are harmful to minors, including, but not limited to, obscene materials (as defined in Iowa Code section 728.1(5)), and gratuitous violence or gore are not permitted at the Capitol Complex. 'Obscene material' is any material depicting or describing the genitals, sex acts, masturbation,

> excretory functions or sadomasochistic abuse which the average person, taking the material as a whole and applying contemporary community standards with respect to what is suitable material for minors, would find appeals to the prurient interest and is patently offensive; and the material, taken as a whole, lacks serious literary, scientific, political or artistic value. 'Gratuitous violence or gore' means any depiction of severe bodily injury or blood, organs, or other bodily fluids, which the average person, taking the material as a whole and applying contemporary community standards with respect to what is suitable material for minors, would find appeals to the prurient interest and is patently offensive; and the material, taken as a whole, lacks serious literary, scientific, political or artistic value.

(PI Ex. 1 ¶ 25; PI Ex. 2 at 93; PI Ex. 3 at 93).

63. Steen did not explain what specific element of the event (the song list, make-and-take ornaments, coloring pages, costume contest, or ritual) was determined to be "obscene material" or "gratuitous violence or gore." *See id.*

64. That evening TST-Iowa emailed Steen to explain how the application was evaluated, and whether there was an appeal process or option to modify the 2024 Event to resolve IDAS's concerns. (PI Ex. 1 ¶ 26; PI Ex. 2 at 95-96; PI Ex. 3 at 95-96).

65. Steen did not respond, and TST-Iowa followed up again the next day. (Ex. 1 ¶ 26).

66. On December 11, 2024, Director Steen and IGOV met again for an in-person discussion. Following this discussion, Director Steen responded to TST Iowa as follows:

> *The event request is denied as submitted. The cumulative circumstances that occur within the State Capitol building, including the presence of minors, coupled with the anticipation of costumes with sticks used as weapons on children, positions the event to be harmful to minors contrary to MOU section 5.15. The evaluation and denial decision rests within my authority as the DAS Director per Administrative Rule 100.4(5). This constitutes a final agency action.*

(PI Ex. 1 ¶ 27; PI Ex. 2 at 96; PI Ex. 3 at 96).

67. TST and Adramelech had endeavored at the outset to make clear that this was a family-friendly event and that there was no obscenity, gratuitous violence, or gore.

68. The phrase, "cumulative circumstances," intentionally obscured any specific rationale for IDAS's decision.

69. At no time had anybody in the congregation proposed to permit or encourage participants in the costume contest to use sticks "as weapons on children." (PI Ex. 1 ¶ 27).

70. TST-Iowa responded, stating that any sticks at the 2024 Event would be "a traditional costume component and for appearance only," and were "never intended to be used on anyone." (PI Ex. 1 ¶ 28; PI Ex. 2 at 97; PI Ex. 3 at 97).

71. Still, in an attempt to save the 2024 Event, TST-Iowa offered to omit the costume contest entirely and even resubmit the application. *Id.*

72. IDAS simply ignored this proposal—despite still another attempt on December 12, 2024, to follow up. *Id.*

73. The scheduled day of the 2024 Event came and passed without IDAS responding. Consequently, TST-Iowa was unable to host the event.

74. Other non-Satanic, religiously affiliated applications for access to the Capitol Building Rotunda that day included "Christmas Carols by Red Oak Mennonite Youth Group," "Christmas Chorale" by Jeff Pierick, "Christmas with Iowa Liberty Network," and "The Molech Monastery Winter Worship." These were denied because they were not submitted 30 days before the event date, in accordance with the requirements on the IDAS website. (PI Exs. 18-20).

75. Through counsel, TST-Iowa made a final attempt to resolve the issue and allow for the 2024 Event without litigation. (PI Ex. 1 ¶ 31; PI Ex. 2 at 101-03; PI Ex. 3 at 101-03). Counsel notified Steen and IDAS that their actions violated TST-Iowa's constitutional rights and the statutory right to nondiscrimination under the Iowa Civil Rights Act, and requested that the Event be rescheduled to Saturday, December 21, or an appropriate alternative date. *Id.*

76. Indeed, any such violence against children would violate the core religious tenets of the congregation, among which are compassion, empathy, justice, bodily autonomy, and respect for others' freedom. *See, generally,* https://thesatanictemple.com/pages/protect-children-project (last visited July 17, 2026).

77. There was no response, notwithstanding the outstanding offer to omit the costume contest and resolve the stated basis for the denial. (PI Ex. 1 ¶ 32).

78. On June 10, 2025, within 300 days of the last act of discrimination, TST and Adramelech both filed separate administrative civil rights complaints with the Iowa Office of Civil Rights against Adam Steen, IDAS, and IGOV for the discriminatory denial of the 2024 Event application. (PI Ex. 1 ¶ 33; PI Ex. 2 at 1-15; PI Ex. 3 at 1-15).

79. On November 24, 2025, the Iowa Office of Civil Rights returned a "Tier 1 Investigative Report" finding that Plaintiffs had presented probable cause to believe IDAS and IGOV discriminated against Plaintiffs, and that further investigation by the Office was merited. (PI Ex. 1 ¶ 38; PI Ex. 2 at 203-204; 219-34; PI Ex. 3 at 203-204; 219-34).

80. On July 7, 2026, less than ninety (90) days prior to the filing of this Complaint, the Iowa Office of Civil Rights issued an Administrative Release (letter of right-to-sue). (PI Ex. 2 at 206-13; PI Ex. 3 at 206-13).

**2025 Holiday Event Denial**

81. On September 29, 2025, TST-Iowa properly submitted a Capitol Building Application to hold an event in the 1st Floor Rotunda–East entitled TST Iowa Holiday Display Day (the " 2025 Event") on December 13, 2025. (PI Ex.1 ¶ 35; PI Ex. 4 at 10; PI Ex. 5 at 10).

82. On October 6, 2025, Mark Campbell began his term as Director of IDAS.

83. In the application, the 2025 Event was described as follows: "TST Iowa's holiday display will include an itinerary for the day with ritual, Krampus costumes, caroling, and other family-friendly activities such as coloring pages, and make and take ornaments. Everything will be family-friendly, and our display will be attended to by at least one member of our congregation at all times." *Id.*

84. On October 29, 2025, Suzy Trotter, the Capitol Complex Events Coordinator for IDAS, informed TST-Iowa that the 2025 Event was added to the Capitol Complex Events Calendar and requested them to complete and submit a MOU "with a sketch and/or details of the event." (PI Ex. 1 ¶ 35; PI Ex. 4 at 13; PI Ex. 5 at 13).

85. TST-Iowa submitted the requested MOU and information on November 4, 2025. (PI Ex. 1 ¶ 36; PI Ex. 4 at 17- 27; PI Ex. 5 at 17-27).

86. On November 6, 2025, Trotter requested additional information about the event. (PI Ex. 1 ¶ 36; PI Ex. 4 at 29; PI Ex. 5 at 29).

87. On November 11, 2025, TST-Iowa provided the requested information. (PI Ex. 1 ¶ 37; PI Ex. 4 at 32- 43; PI Ex. 5 at 32-43).

88. On November 24, 2025, Suzy Trotter emailed TST-Iowa stating, "This request is not approved. If you have any questions, contact Director Campbell at mark.campbell@iowa.gov." (PI Ex. 1 ¶ 39; PI Ex. 4 at 46; PI Ex. 5 at 46).

89. Defendants provided no basis for the denial.

90. Because the IDAS denied the 2025 Holiday Event, Plaintiffs had to secure alternative accommodations at a privately held public accommodation, and incurred additional expenses. (PI Ex. 1 ¶ 40).

91. As clarified repeatedly, no children were beaten at the event, nor would they have

been beaten at the Capitol Complex.

92. On April 9, 2026, within 300 days of the last act of discrimination, TST and Adramelech both filed separate civil rights complaints against Mark Campbell and IDAS for the discriminatory denial of the 2025 Event application. (PI Ex. 1 ¶ 39; PI Ex. 4 at 1-6; PI Ex. 5 at 1-6).

93. On July 7, 2026, less than ninety (90) days prior to the filing of this Complaint, the Iowa Office of Civil Rights issued an Administrative Release (letter of right-to-sue). (PI Ex. 1 ¶ 43; PI Ex. 4 at 231-35; PI Ex. 5 at 231-35).

**2026 Holiday Event Denial**

94. On March 7, 2026, TST-Iowa properly submitted a Capitol Building Application to hold an event in the 1st Floor Rotunda–East entitled TST Iowa Holiday Display Day (the "2026 Event") on December 12, 2026. (PI Ex.1 ¶ 41; PI Ex. 6 at 12; PI Ex. 7 at 12).

95. As a matter of process, when IDAS receives an application, the events coordinator acknowledges receipt and places the event on the calendar within one to two business days. This has been the case with all of the applications. (PI Ex. 18).

96. Only TST-Iowa's application went unanswered for such an extended time. *Id.*

97. Plaintiffs waited approximately 75 days and received no response or even acknowledgement of their application from Defendants.

98. On May 19, 2026, within 300 days of the last act of discrimination, TST and Adramelech both filed separate civil rights complaints against Mark Campbell and IDAS for the discriminatory treatment in public accommodations and services regarding their 2026 Event application. (PI Ex. 1 ¶ 42; PI Ex. 6 at 1-9; PI Ex. 7 at 1-9).

99. On July 7, 2026, Plaintiffs received the right to sue for their 2024 and 2025 ICRA

complaints. (PI Ex. 1 ¶ 43; PI Ex. 2 at 206-13; PI Ex. 3 at 206-13; PI Ex. 4 at 231-35; PI Ex. 5 at 231-35).

100. On July 15, 2026, Defendants responded to their initial application with an MOU and added the 2026 event to the Capitol Rotunda Calendar. (PI Ex. 1 ¶ 44; PI Ex. 8).

101. Defendants responded 130 days after Plaintiffs submitted the application.

102. Defendants responded nearly two months after Plaintiffs filed the ICRA complaint.

103. Defendants responded two weeks after Plaintiffs requested the Right to Sue for the prior two cases.

104. On July 21, 2026, less than ninety (90) days prior to the filing of this Complaint, the Iowa Office of Civil Rights issued an Administrative Release (letter of right-to-sue). (PI Ex. 1 ¶ 43; PI Ex. 5 at 514-18; PI Ex. 5 at 514-18).

105. On July 31, 2026, Plaintiffs emailed Defendants the signed MOU. (PI Ex. 1 ¶ 45; PI Exs. 9, 10).

106. Defendants have not issued a countersigned MOU as of this Complaint.

107. The 2026 Event application has been pending for 159 days as of this Complaint.

108. As shown by the past two years' sequence of events, neither providing a countersigned MOU nor adding the event to the calendar has guaranteed Defendants will allow Plaintiffs' event to proceed.

## DISCRIMINATORY STATEMENTS AGAINST TST-IOWA

109. At a campaign event on November 24, 2025, Defendant Steen made the following statements directly confirming the allegations that this denial was based on retaliation and discrimination based on their religious views of TST-Iowa, and that the change in policy

governing events and displays at the Capitol Complex was retaliatory.

> One of the most divisive issues in the state over the last couple of years and the attempts of the so-called Satanic church has been denied again. No more marketing to children. No more trying to get them to create Satanic symbols, sing Satanic hymns, partake in Satanic rituals. No more having youth involved in costume contests and defending weapons used to abuse youth. This is not religious expression. It's not free speech. It is evil right now. 1

(PI Ex. 1 ¶ 34(c); PI Ex. 2 at 119-122; PI Ex. 3 at 119-122); *available at:* https://youtu.be/jDrGaZk4gtw.

110. He also stated, "The filth here in the state house is going to stay out of here this Christmas season," and thanked Mark Campbell and Governor Reynolds for fighting against TST and keeping them out of the Capitol. *Id.*

111. At a different event, he stated that, "I'm a Christian conservative. . . . I'll keep the satanists out of the Capitol because our Iowa values are under attack, and we don't keep them without a fight." (PI Ex. 1 ¶ 34(d); PI Ex. 2 at 127-29; PI Ex. 3 at 127-29; Amanda Rooker, *Iowa governor candidate Adam Steen rolls out statewide ad buy as primary nears*, KCCI (Apr. 23, 2026), https://www.kcci.com/article/iowa-governor-candidate-adam-steen-rolls-out-statewide-ad-buy-as-primary-nears/71112989.

112. In addition to Steen's own comments, several prominent political leaders spoke out against TST-Iowa's 2023 holiday display.

113. In a press release dated December 12, 2023, Iowa Governor Kim Reynolds publicly called the display "absolutely objectionable," although she acknowledged TST-Iowa's equal right to participate in the public forum. (PI Ex. 1 ¶ 10(a); PI Ex. 11).

114. State Representative Brad Sherman asserted in a December 8, 2023 public pamphlet, entitled Honoring God at the Capitol, that Iowa depends upon the "One Supreme God" for its continued blessings, argued that Satanism should not be afforded equal expression in government spaces, and called for legislation prohibiting Satanic displays on state property

while simultaneously calling for legislation requiring the Ten Commandments, a Christian display, in all State-owned buildings and public schools. (PI Ex. 1 ¶10(b); PI Ex. 12).

115. State Representative Dunwell made a public comment via Twitter on December 8, 2023, which described TST's display as "evil," urged Christians to oppose its message because it "glorifies the evil influence" they oppose, declared that "Iowa needs Jesus," and suggested reassessing Capitol-display policies; although he also acknowledged TST-Iowa's equal right to participate in the open public forum. (PI Ex. 1 ¶ 10(c); PI Ex. 13).

116. In February 2024, State Senator Sandy Salmon introduced SF 2210, entitled *A bill for an act relating to Satanic displays or Satanic worship on property of the state and its political subdivisions*. ( https://www.legis.iowa.gov/legislation/BillBook?ga=90&ba=SF2210). The bill called for: (1) a prohibition against any Iowa political subdivision or Iowa itself from recognizing any Satanic organization; (2) a prohibition on Satanic displays, symbols, or practice of Satanism from being allowed on public property, public schools, or any property owned by either; (3) prohibited any act of Satanic practice involving the ending of a life or shedding of blood, whether human or animal; and (4) established criminal repercussions for items (2) and (3) above. *See id*; *See* Jannay Towne, WHO 13, *Satanic Temple of Iowa calls bill banning satanic displays on state property unconstitutional* (PI Ex. 14 (available at: https://who13.com/news/satanic-temple-of-iowa-calls-bill-banning-satanic-displays-on-state-property-unconstitutional/) (last visited July 14, 2026)).

117. The purpose of this bill was to further State Rep. Sherman's calls for a prohibition against Satanism enjoying equal protection under the laws as Christianity. (PI Ex. 1 ¶ 10(b); PI Ex. 12).

## **CLAIMS FOR RELIEF**

**COUNT I**
**42 U.S.C. § 1983 - DEPRIVATION OF FREE SPEECH RIGHTS**

118. Plaintiffs reallege and incorporate by reference the allegations set forth above, as though fully set forth herein.

119. Defendant Campbell is a state actor operating under color of state law.

120. The First Amendment, applicable to the State of Iowa by the Fourteenth Amendment, provides in part that the government "shall make no law . . . abridging the freedom of speech."

121. Discrimination against speech based on its content and viewpoint violates the First Amendment.

122. Religious speech is fully protected by the First Amendment.

123. Campbell has excluded TST-Iowa from engaging in protected religious speech grounded in their beliefs of Satanism and the governing tenets of TST at their holiday events.

124. This exclusion of speech based on religious viewpoint constitutes impermissible viewpoint discrimination and is presumptively unconstitutional. *Shurtleff v. City of Bos., Massachusetts*, 596 U.S. 243, 258 (2022); *Satanic Temple, Inc.,* 671 F. Supp. 3d at 568.

125. The Capitol Rotunda is open to groups for expressive activity.

126. In a public forum generally open to the public, a government can only lawfully enforce a content-based speech restriction by excluding religious speech by Plaintiffs if it serves a compelling government interest that is advanced in the least restrictive means available.

127. No compelling government interest justifies excluding TST-Iowa's protected religious speech.

128. Any interest the government may have in excluding Plaintiffs' protected speech is not advanced in the least restrictive means available.

129. This exclusionary policy violates the fundamental principle that a state regulation of speech should be viewpoint and content-neutral, and it violates TST-Iowa's free speech rights under the First and Fourteenth Amendments.

130. Plaintiffs have suffered, are suffering, and absent prospective relief will continue to suffer injuries as a result of these violations.

**COUNT II**
**42 U.S.C. § 1983 - DEPRIVATION OF FREE EXERCISE RIGHTS**

131. Plaintiffs reallege and incorporate by reference the allegations set forth above, as though fully set forth herein.

132. Defendant Campbell is a state actor operating under color of state law.

133. The First Amendment of the United States Constitution, as incorporated through the Fourteenth Amendment, prohibits a State or any political subdivision thereof from prohibiting the free exercise of religion (the "Free Exercise Clause").

134. TST is a non-theistic religious organization that has Seven Tenets: Compassion, Justice, Bodily Autonomy, Freedom of Others, Scientific Understanding, Fallibility, and Nobility.

135. In February 2019, TST was recognized by the IRS as a "church" within the meaning of 26 USC § 170(b)(1)(A)(i).

136. TST has established its status as a sincere religion entitled to the full suite of First Amendment protections. *See Satanic Temple v. City of Scottsdale*, No. CV18-00621-PHX-DGC, 2020 WL 587882 (D. Ariz. Feb. 6, 2020); *Cave*, 829 F. Supp. 3d at 669-671.

137. Adramelech sincerely holds the beliefs and practices espoused by The Satanic Temple.

138. Defendants' policy governing events at the Capitol Complex is not applied or enforced equally against all organizations seeking to host events.

139. State actions that directly target religious conduct or identity, and are neither neutral nor generally applicable, are subject to the most rigorous scrutiny. *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 546 (1993).

140. When a government actor reserves the right to issue discretionary exceptions to otherwise-applicable limitations, the failure to issue a discretionary exception when it burdens the free exercise of religion means the limitation is not "generally applicable." *See Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522, 536 (2021).

141. By denying TST-Iowa's application to hold an event at the Capitol Rotunda because of Plaintiff's religious beliefs, Defendants are violating Plaintiffs' clearly established right to the free exercise of religion under the First and Fourteenth Amendments, and this exclusion cannot survive strict scrutiny.

142. Plaintiffs have suffered, are suffering, and absent prospective relief will continue to suffer injuries as a result of these violations.

**<u>COUNT III</u>**
**42 U.S.C. § 1983 - DEPRIVATION OF EQUAL PROTECTION RIGHTS**

143. Plaintiffs reallege and incorporate by reference the allegations set forth above, as though fully set forth herein.

144. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Zink v. Lombardi*, 783 F.3d 1089, 1110 (8th Cir. 2015) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

145. Strict scrutiny is required in cases where there is a suspect class or where the restriction at issue impinges upon the exercise of a fundamental right. *Plyler v. Doe*, 457 U.S. 202, 216–17 (1982).

146. Here, TST-Iowa's First Amendment rights of free speech and free exercise of religion are at issue, and Defendants cannot survive strict scrutiny.

147. Additionally, TST is a minority religion and has been held to be a suspect class under Eighth Circuit law. *Cave*, 829 F. Supp. 3d at 680–81.

148. The Eighth Circuit Court of Appeals has recognized religion as a suspect classification. *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006); *see also Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815–16 (8th Cir. 2008) ("Religion is a suspect classification.")

149. TST-Iowa is powerless to protect themselves by the political process because they are a historically oppressed minority outsider group. Judicial intervention is necessary to vindicate their constitutional rights.

150. Defendants have permitted Christian groups and other groups to host events at the Capitol Rotunda, and are constitutionally obligated to allow Plaintiffs an equal opportunity to host their event.

151. Defendants refused and continue to refuse TST-Iowa an equal opportunity to host an event at the Capitol Rotunda because of their constitutionally protected religious beliefs and speech as well as their status as a protected class.

152. This preferential treatment for other religious events, and not TST-Iowa, "sends a message to nonadherents that they are outsiders, not full members of the political community, and

an accompanying message to [ ] adherents that they are insiders, favored members of the political community." *Lynch v. Donnell*, 465 U.S. 668, 688 (1984) (O'Connor, J., concurring).

153. By allowing other religious events, but prohibiting TST-Iowa's events, Defendants have engaged in unlawful disparate treatment against TST-Iowa based on their religion, protected speech, and membership in a suspect class. This exclusion cannot survive strict scrutiny and violates the Equal Protection Clause of the Fourteenth Amendment.

154. Plaintiffs have suffered, are suffering, and absent prospective relief will continue to suffer injuries as a result of these violations.

**COUNT IV**
**DISCRIMINATION IN PUBLIC ACCOMMODATIONS OR SERVICES BASED ON RELIGION AND PERCEIVED RELIGION**
**Iowa Code Chapter 216.7**
**(*The Satanic Temple v. Mark Campbell, Adam Steen and IDAS*)**

155. TST realleges and incorporates by reference the allegations set forth above, as though fully set forth herein.

156. The Iowa Civil Rights Act, Iowa Code section 216.7, prohibits discrimination in public accommodations based on actual and perceived religion.

157. Under the ICRA, following administrative release, the court is empowered to "grant any relief in an action under this section which is authorized by section 216.15, subsection 9, to be issued by the agency." Iowa Code § 216.6. That subsection, in turn, grants the agency the power to "state its findings of fact and conclusions of law," and "issue an order requiring the respondent to cease and desist from the discriminatory or unfair practice and to take the necessary remedial action as in the judgment of the agency will carry out the purposes of this chapter." Iowa Code § 216.15(9). "Remedial action" includes "Extension to all individuals of the full and equal enjoyment

of the advantages, facilities, privileges, and services of the respondent denied to the complainant because of the discriminatory or unfair practice." Iowa Code § 216.15(9)(a)(5).

158. TST has complied with all conditions precedent to the filing of this cause of action under the ICRA.

159. As stated above, TST has established its religious bona fides.

160. TST experienced three incidents of unlawful discrimination in public accommodations and services by Defendants, the latest of which is ongoing.

161. Defendants denied the application to hold an event at the Capitol Rotunda on December 14, 2024. As a result, TST was denied use of public accommodations.

162. Defendants denied the application to hold an event at the Capitol Rotunda on December 13, 2025. As a result, TST was denied use of public accommodations.

163. Defendants completely ignored the application to hold an event at the Capitol Rotunda on December 12, 2026, for 130 days, after which they finally responded with an MOU. IDAS has not yet provided a final countersigned MOU. The application is still pending after 159 days. TST faces ongoing denial of public accommodations.

164. Defendants have permitted other religious and nonreligious groups to host events at the Capitol Rotunda.

165. Defendants discriminated against TST in how they deliver services and public accommodations because their religion and/or their perception of TST's religion was a motivating factor in their denial of the 2024 and 2025 holiday event applications and the undue delay in processing the 2026 holiday application.

166. Defendants' actions violated the Iowa Civil Rights Act, Iowa Code section 216.7.

167. As a result of the Defendants' unlawful actions, TST has suffered damages.

**COUNT V**
**DISCRIMINATION IN PUBLIC ACCOMMODATIONS OR SERVICES BASED ON RELIGION AND PERCEIVED RELIGION**
**Iowa Code Chapter 216.7**
**(*Mortimer Adramelech v. Mark Campbell, Adam Steen and IDAS*)**

168. Adramelech realleges and incorporates by reference the allegations set forth above, as though fully set forth herein.

169. The Iowa Civil Rights Act, Iowa Code section 216.7, prohibits discrimination in public accommodations based on religion and perception of religion.

170. Under the ICRA, following administrative release, the court is empowered to "grant any relief in an action under this section which is authorized by section 216.15, subsection 9, to be issued by the agency." Iowa Code § 216.6. That subsection, in turn, grants the agency the power to "state its findings of fact and conclusions of law," and "issue an order requiring the respondent to cease and desist from the discriminatory or unfair practice and to take the necessary remedial action as in the judgment of the agency will carry out the purposes of this chapter." Iowa Code § 216.15(9). "Remedial action" includes "Extension to all individuals of the full and equal enjoyment of the advantages, facilities, privileges, and services of the respondent denied to the complainant because of the discriminatory or unfair practice." Iowa Code § 216.15(9)(a)(5).

171. Adramelech has complied with all conditions precedent to the filing of this cause of action under the ICRA.

172. Adramelech is a minister of The Satanic Temple, and a member of a protected group based on his religion.

173. Adramelech sincerely holds the beliefs and practices espoused by The Satanic Temple.

174. Adramelech has experienced three incidents of unlawful discrimination in public accommodations and services by Defendants.

175. Defendants denied the application to hold an event at the Capitol Rotunda on December 14, 2024. As a result, Adramelech was denied use of public accommodations.

176. Defendants denied the application to hold an event at the Capitol Rotunda on December 13, 2025. As a result, Adramelech was denied use of public accommodations.

177. Defendants ignored the application to hold an event at the Capitol Rotunda on December 12, 2026, for 130 days, after which they finally responded with an MOU. IDAS has not yet provided a final countersigned MOU. The application is still pending after 159 days. Adramelech faces ongoing denial of public accommodations.

178. Defendants have permitted other religious and nonreligious groups to host events at the Capitol Rotunda.

179. Defendants discriminated against Adramelech in how they deliver services and public accommodations. Adramelech's religion and/or Defendants' perception of Adramelech's religion was a motivating factor in their denial of the 2024 and 2025 holiday event applications and the undue delay in processing the 2026 holiday application.

180. Defendants' actions violated the Iowa Civil Rights Act, Iowa Code section 216.7.

181. As a result of Defendants' unlawful actions, Adramalech has suffered damages.

## COUNT VI
## RETALIATION IN PUBLIC ACCOMMODATIONS OR SERVICES
## Iowa Code Chapter 216.11
## (*The Satanic Temple v. Mark Campbell, Adam Steen and IDAS*)

182. TST realleges and incorporates by reference the allegations set forth above, as though fully set forth herein.

183. TST has complied with all conditions precedent to the filing of this cause of action under the ICRA.

184. The ICRA prohibits any person from retaliating against another because they have "lawfully opposed any practice forbidden by," "obeys the provisions of," or "has filed a complaint, testified, or assisted in any proceeding under" Chapter 216 of the Iowa Code. Iowa Code § 216.11(2).

185. Courts have found protected activities include internal and informal complaints about discrimination. *Gagnon v. Sprint Corp*., 284 F.3d 839, 854 n.4 (8th Cir. 2002), abrogated on other grounds by *Desert Palace v. Costa*, 539 U.S. 90 (2003).

186. First, TST complained about an incident of vandalism at its 2023 holiday display, which was destroyed following critical remarks from national and state political figures. These complaints were ignored.

187. Second, TST complained that Defendants were inconsistently applying its newly implemented policy regarding events at the Capitol to exclude TST.

188. Third, TST complained that Defendants were inconsistently applying the newly implemented policy regarding events at the Capitol to exclude TST-Iowa through a letter sent by their counsel.

189. Finally, TST has also filed three formal administrative complaints with the OCR.

190. TST engaged in statutorily protected conduct.

191. TST's 2024 and 2025 event applications were denied. The 2026 event application was not processed in a timely fashion and is still pending after 159 days. This was a materially adverse action.

192. There is a causal connection between TST's protected activity, the informal and formal complaints, and the denials of their event applications.

193. As a result of the Defendants' unlawful actions, TST has suffered damages.

**COUNT VII**
**RETALIATION IN PUBLIC ACCOMMODATIONS OR SERVICES**
**Iowa Code Chapter 216.11**
**(*Mortimer Adramelech v. Mark Campbell, Adam Steen and IDAS*)**

194. Adramelech realleges and incorporates by reference the allegations set forth above, as though fully set forth herein.

195. The ICRA prohibits any person from retaliating against another because they have "lawfully opposed any practice forbidden by," "obeys the provisions of," or "has filed a complaint, testified, or assisted in any proceeding under" Chapter 216 of the Iowa Code. Iowa Code § 216.11(2).

196. Adramelech has complied with all conditions precedent to the filing of this cause of action under the ICRA.

197. Courts have found protected activities include internal and informal complaints about discrimination. *Gagnon v. Sprint Corp*., 284 F.3d 839, 854 n.4 (8th Cir. 2002), abrogated on other grounds by *Desert Palace v. Costa*, 539 U.S. 90 (2003).

198. First, Adramelech complained about an incident of vandalism at its 2023 holiday display, which was destroyed following critical remarks from national and state political figures. These complaints were ignored.

199. Second, Adramelech complained that Defendants were inconsistently applying its newly implemented policy regarding events at the Capitol to exclude Adramelech.

200. Third, Adramelech complained that Defendants were inconsistently applying the newly implemented policy regarding events at the Capitol to exclude TST-Iowa through a letter sent by their counsel.

201. Finally, Adramelech has also filed three formal administrative complaints with the OCR.

202. Adramelech engaged in statutorily protected conduct.

203. Adramelech's 2024 and 2025 event applications were denied. The 2026 event application was not processed in a timely fashion and is still pending after 159 days. These were materially adverse actions.

204. There is a causal connection between Adramelech's protected activity, the informal and formal complaints, and the denials of their event applications.

205. As a result of the Defendants' unlawful actions, Adramelech has been damaged.

**COUNT VIII**
**RELIGIOUS FREEDOM RESTORATION ACT**
**Iowa Code Chapter 675**

206. Plaintiffs reallege and incorporate by reference the allegations set forth above, as though fully set forth herein.

207. "State action shall not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless the government demonstrates that applying the burden to that person's exercise of religion is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest." Iowa Code § 675.4(1).

208. "A person whose exercise of religion has been substantially burdened in violation of this chapter may assert such violation as a claim or defense in a judicial or administrative

proceeding and obtain appropriate relief, including damages, injunctive relief, or other appropriate redress. Standing to assert a claim or defense under this chapter shall be governed by the general rules of standing under state and federal law. The plaintiff, if the prevailing party, may also recover reasonable attorney fees and costs." Iowa Code § 675.4(2).

209. Defendants have substantially burdened Plaintiffs' exercise of religion by excluding them from the use of the Capitol Complex to suppress the expression of their religious beliefs.

210. Defendants have no compelling interest to burden Plaintiffs' exercise of religion, and their exclusion is not the least restrictive means of furthering the interest.

211. The denials violate Plaintiffs' free exercise rights and do not survive strict scrutiny under the Iowa RFRA.

212. As a result of Defendants' unlawful actions, Plaintiffs have been damaged.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that the Court grant the following relief:

213. Enter a judgment declaring that Defendant Campbell's exclusion of TST-Iowa's events was unconstitutional under the First and Fourteenth Amendments to the United States Constitution, and unlawful under the Iowa Civil Rights Act and the Iowa Religious Freedom Restoration Act;

214. Enter a judgment declaring that Defendant Steen and IDAS' exclusion of TST-Iowa's events was unlawful under the Iowa Civil Rights Act and the Iowa Religious Freedom Restoration Act;

215. Award preliminary and permanent injunctive relief against Defendant Campbell to prevent future discrimination on the basis of free speech and religious beliefs by directing Campbell

to stop denying TST-Iowa's applications to host an event at the Capitol Complex based on their speech and religion; and require nondiscrimination in handling of future applications and other dealings with TST-Iowa, including timely responsiveness and evaluation on an equal basis.

216. Award permanent injunctive relief against Defendant Campbell and IDAS to prevent future discrimination on the basis of religious expression and beliefs by directing them to stop denying TST-Iowa's applications to host an event at the Capitol Complex based on their religion; and require nondiscrimination in handling of future applications and other dealings with TST-Iowa, including timely responsiveness and evaluation on an equal basis.

217. Order Defendants Campbell, Steen and IDAS to pay TST-Iowa compensatory damages for the deprivations of their rights under the Iowa Civil Rights Act and Iowa Religious Restoration Act, in an amount to be determined at trial;

218. Award the Plaintiffs reasonable attorneys' fees and costs; and

219. Any other relief the Court deems just and equitable under the circumstances.

Respectfully submitted this 13th day of August, 2026.

/s/ Shefali Aurora
Shefali Aurora, AT00012874
/s/ Rita Bettis Austen
Rita Bettis Austen, AT0011558
/s/ Thomas Story
Thomas Story, AT0013130

ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Ste. 808
Des Moines, IA 50309–2317
Telephone: (515) 243-3988
Fax: (515) 243-8506
Email: Shefali.Aurora@aclu-ia.org
Email: Rita.Bettis@aclu-ia.org
Email: Thomas.Story@aclu-ia.org

/s/ Emily E. Wilson
Emily E. Wilson AT0013860
/s/ Melissa C. Hasso
Melissa C. Hasso AT0009833

HASSO & WILSON LAW FIRM
111 E. Grand Ave., Suite 212
Des Moines, IA 50309
Telephone: (515) 224-2079
Fax: (515) 224-2321
Email: ewilson@hwlawiowa.com
Email: mhasso@hwlawiowa.com

/s/Matt Kezhaya
Matt Kezhaya
(*Application for admission pro hac vice forthcoming*)

Kezhaya Law PLC
150 S. Fifth St., Suite 1850
Minneapolis, MN 55402
Telephone: (612) 276-2216
Fax: matt@kezhaya.law