IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| The Satanic Temple, Inc., and Mortimer Adramelech,<br><br>Plaintiffs,<br><br>vs.<br><br>Mark Campbell, Director of the Iowa Department of Administrative Services, *in his official and individual capacities*, Adam Steen, former Director of the Iowa Department of Administrative Services, *in his individual capacity,* and the Iowa Department of Administrative Services,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 4:26-cv-336<br><br><br>**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

**COME NOW** Plaintiffs and submit the following brief supporting their Motion for a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 and Local Rule 7(d).

## <u>TABLE OF CONTENTS</u>

INTRODUCTION     6

ARGUMENT     6

    I. PLAINTIFFS ARE LIKELY TO SUCCEED ON MERITS OF THEIR CLAIMS     7

       A. Plaintiffs are Likely to Succeed on the Free Speech Claims.     7

          1. The denials were  content-based decisions.     8

          2. The denials were viewpoint discrimination.     10

       B. Plaintiffs are Likely to Succeed on the Free Exercise Claims.     156

       C. The Denials Cannot Survive Strict Scrutiny.     178

D. Plaintiffs are Likely to Succeed on the ICRA Claims.                    189

E. Plaintiffs are Likely to Succeed on the Claims under the Iowa Religious Freedom

Restoration Act.                                                          21

II. THE REMAINING PRELIMINARY INJUNCTION FACTORS ALL WEIGH IN

FAVOR OF GRANTING PLAINTIFF PRELIMINARY INJUNCTIVE RELIEF                 22

A. Plaintiffs Have Suffered Irreparable Harm and Will Experience Further Harm Absent

an Injunction.                                                           222

B. The Balance of Equities and Public Interest Weighs in Favor of a Preliminary

Injunction.                                                              222

CONCLUSION                                                               233

## TABLE OF AUTHORITIES

### Cases

*Brown v. Ent. Merchants Ass'n*, 564 U.S. 786 (2011)..............................................................14-15

*Calvin Klein Cosmetics Corp. v. Lenox Lab., Inc.,* 815 F.2d 500 (8th Cir. 1987)..........................7

*Cave v. Jester*, 829 F. Supp. 3d 582 (E.D. Ark. 2026)....................................................20

*Cantwell v. Connecticut*, 310 U.S. 296 (1940)........................................................16-17

*Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993)................................16-17

*City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61 (2022)......................10

*City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432 (1985)........................................14

*Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788 (1985)...............................10

*Craig v. Simon*, 980 F.3d 614 (8th Cir. 2020)........................................................7

*Cuffley v. Mickes*, 208 F.3d 702 (8th Cir. 2000)..................................................................11

*D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 1004 (8th Cir. 2019)..........23

*Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981).....................................6-7, 22

*Elrod v. Burns*, 427 U.S. 347 (1976)...................................................................................22

*Emp. Div., Dep't of Hum. Res of Or. v. Smith*, 494 U.S. 872, 878-79 (1990)...............................16

*Everson v. Board of Educ.*, 330 U.S. 1 (1947)........................................................................7

*Fulton v. City of Phila., Pa.*, 593 U.S. 522 (2021)..................................................................16

*Gay & Lesbian Students Ass'n v. Gohn*, 850 F.2d 361 (8th Cir. 1988)....................................10

*Good v. Iowa Dep't of Hum. Servs.*, 924 N.W.2d 853 (Iowa 2019)..........................................19

*Johnson v. Bayens*, 2020 WL 12618873 (S.D. Iowa Dec. 10, 2020)........................................8

*Kirt v. Fashion Bug #3253*, 479 F. Supp. 2d 938 (N.D. Iowa 2007)........................................20

*Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384 (1993).....................10

*Lubavitch of Iowa, Inc. v. Walters*, 684 F. Supp. 610 (S.D. Iowa 1988)...................................8

*Lubavitch of Iowa, Inc. v. Walters*, 873 F.2d 1161 (8th Cir. 1989)........................................8

*Mahmoud v. Taylor*, 606 U.S. 522 (2025).............................................................................22

*McCullen v. Coakley*, 573 U.S. 464 (2014)...........................................................................8

*Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011 (8th Cir. 2023)...............................................................................................................23

*Murthy v. Missouri*, 603 U.S. 43 (2024)...............................................................................15

*Nebraska v. Biden*, 52 F.4th 1044 (8th Cir. 2022)..................................................................23

*Neighborhood Enterprises, Inc. v. City of St. Louis*, 644 F.3d 728 (8th Cir. 2011)......................10

*Niemotko v. Maryland*, 340 U.S. 268 (1951).........................................................................18

*Nken v. Holder*, 556 U.S. 418 (2009)..................................................................................23

*Planned Parenthood v. Rounds*, 530 F.3d 724 (8th Cir. 2008).....................................................7

*Powell v. Noble*, 798 F.3d 690 (8th Cir. 2015)..................................................................................22

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992)................................................................................9

*Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015)........................................................................9

*Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs,* 826 F.3d 1030

(8th Cir. 2016).......................................................................................................................................7

*Robb v. Hungerbeeler,* 370 F.3d 735 (8th Cir. 2004).......................................................................14

*Rodgers v. Bryant*, 942 F.3d 451 (8th Cir. 2019).............................................................................23

*Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819 (1995)...............................7, 10

*Satanic Temple, Inc. v. Saucon Valley Sch. Dist.,* 671 F. Supp. 3d 555 (E.D. Pa. 2023)..........13-14

*Schmitt v. Rebertus*, 148 F.4th 958 (8th Cir. 2025)..............................................................6-7, 21-23

*Sessler v. City of Davenport, Iowa*, 102 F.4th 876 (8th Cir. 2024)................................................8-9

*Shurtleff v. City of Bos., Mass.*, 596 U.S. 243 (2022)......................................................................17

*Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763 (8th Cir. 1998).......................................................6

*Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622 (1994)...................................................................9

*U. S. Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973).....................................................................18

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943).......................................................18-19

*Wilbur-Ellis Co., LLC v. Jens*, 139 F.4th 608 (8th Cir. 2025)..........................................................6

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008)..........................................................................6

**Constitutional Amendments**

U.S. Const. Amend. I...................................................................................................................passim

U.S. Const. Amend. XIV.............................................................................................................passim

**Statutes**

28 U.S.C. § 1367(a)..............................................................................................20

Iowa Code § 216..............................................................................................19-20

Iowa Code § 675.4................................................................................................21

Iowa Code § 728.1(5)...........................................................................................12

**Rules**

Iowa Admin Code r.11-100.4...................................................................8, 10-11, 17

**INTRODUCTION**

The evidence overwhelmingly shows that the Defendants have violated, and will continue violating, Plaintiffs' First Amendment rights of free speech and free exercise by singling them out for exclusion from the Capitol Complex based on their politically disfavored religious activity and viewpoint. Plaintiffs have submitted three identical applications to host public holiday events at the Rotunda. Plaintiffs were excluded for the past two years. Plaintiffs' December 2026 application will likely also be denied by Defendants absent relief from this Court. As of this filing, Plaintiffs' application for the 2026 holiday season has been pending for 159 days, whereas all other applications have been acted upon within a few days of submission. Plaintiffs seek a preliminary injunction from this Court, ordering Defendants to stop violating their rights under the First and Fourteenth Amendments of the Constitution, the Iowa Religious Freedom Restoration Act, and the Iowa Civil Rights Act, and to approve Plaintiffs' application to hold a holiday event at the Iowa Capitol Rotunda on December 12, 2026.

**ARGUMENT**

Motions for preliminary injunction are governed by a four-factor test. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). Plaintiffs must show: (1) they are likely to succeed on the merits of their claims, (2) they face the threat of irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in favor of preliminary relief, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Dataphase Sys., Inc. at* 114 (8th Cir. 1981). "No factor is determinative, but the movant's probability of success is the most significant." *Wilbur-Ellis Co., LLC v. Jens*, 139 F.4th 608, 611 (8th Cir. 2025). This is particularly true in First Amendment cases. *Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998); *Schmitt v. Rebertus*, 148 F.4th 958, 970–71 (8th Cir.

6

2025) ("When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied.").

## I. PLAINTIFFS ARE LIKELY TO SUCCEED ON MERITS OF THEIR CLAIMS

To determine the likelihood of success on the merits, a court assesses whether the plaintiffs have a "fair chance" of prevailing. *Planned Parenthood v. Rounds*, 530 F.3d 724, 732–33 (8th Cir. 2008) (en banc); *see also Craig v. Simon*, 980 F.3d 614, 617 (8th Cir. 2020) (per curiam). In doing so, a court should flexibly weigh the case's particular circumstances to determine "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo." *Calvin Klein Cosmetics Corp. v. Lenox Lab., Inc.,* 815 F.2d 500, 503 (8th Cir.1987) (quoting *Dataphase,* 640 F.2d at 113). Plaintiffs only need to show they are likely to succeed on *one* of their claims to warrant issuance of a preliminary injunction. *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs,* 826 F.3d 1030, 1040 (8th Cir. 2016)(emphasis added).

### A. Plaintiffs are Likely to Succeed on the Free Speech Claims.

"Congress shall make no law ... abridging the freedom of speech." U.S. Const. Amend. I. The Free Speech Clause applies to the States through its incorporation into the Fourteenth Amendment. *See Everson v. Board of Educ.*, 330 U.S. 1, 8 (1947). Defendants have repeatedly denied Plaintiffs' applications in order to suppress the expression of their religious viewpoint. This constitutes impermissible viewpoint discrimination and is presumptively unconstitutional. *See Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829–830 (1995) (the First Amendment generally precludes public universities from denying student organizations access to school-sponsored forums because of the groups' viewpoints). As more fully discussed below,

Defendants' denials were both facially content-based and the justifications proffered were a blatantly pretextual attempt to conceal viewpoint discrimination.

    1.  <u>The denials were  content-based decisions.</u>

The government's ability to restrict protected speech depends on (1) the nature of the forum in which the speech occurs, and (2) whether the restriction is content-based or content-neutral. *Sessler v. City of Davenport, Iowa*, 102 F.4th 876, 881 (8th Cir. 2024).

At issue is speech intended to take place in a traditional or designated public forum. "[T]raditional public fora are areas that have historically been open to the public for speech activities." *McCullen v. Coakley*, 573 U.S. 464, 476–77 (2014). A designated public forum is a public area that has not traditionally been open (like parks or streets), but which the government has designated for open expression. *Sessler,* 102 F.4th at 882-83. The Capitol Complex is available to any member of the public on a first-come, first-served basis, without restrictions as to subject-matter of permissible events or permissible classes of applicants. (PI Exs. 1 ¶ 9, 16; Iowa Admin Code r.11-100.4(4)). Because the Capitol Complex is open to all without regard to the subject matter of the event, it is a designated public forum. *See Johnson v. Bayens*, 2020 WL 12618873 at *6 (S.D. Iowa Dec. 10, 2020) ("The challenged bans have the effect of regulating the manner of Plaintiffs' exercise of First Amendment rights in the Capitol and on the Capitol Complex grounds, traditional public fora."); *see also Lubavitch of Iowa, Inc. v. Walters*, 684 F. Supp. 610, 613 (S.D. Iowa 1988), aff'd, 873 F.2d 1161 (8th Cir. 1989) (recognizing that the state had designed the Capitol Complex a public forum, although finding the limits on religious expression at issue there were reasonable time, place, and manner restrictions not based on particular religious viewpoint).

In a designated public forum, the government faces the most restrictions on its ability to limit speech, and must justify content-based restrictions by strict scrutiny: the exclusion must be

8

narrowly tailored to serve a compelling government interest. *Sessler*, 102 F.4th at 882. Content-based discrimination occurs when the government regulates speech based on hostility—or favoritism—towards the underlying message expressed. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992). "The vice of content-based legislation … is not that it is always used for invidious, thought-control purposes, but that it lends itself to use for those purposes." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 167 (2015). Regulations of speech are only content-neutral when the outcome does not depend on a reference to the ideas or views expressed. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 643 (1994).

The repeated denials of Plaintiffs' applications were content-based exclusions. The 2024 event denial was expressly based on the details provided in the event application, from a finalized song list to the specific coloring book pages, to images of anticipated costumes in the costume contest. (PI Ex. 1 ¶ 22; PI Ex. 2 at 34; PI Ex. 3 at 34) ("as a reminder, please submit the image and details requested below to determine approval"). The 2025 decision also entailed a government review of the program as a condition of accessing the designated public forum. (PI Ex. 1 ¶ 36; PI Ex. 4 at 30; PI Ex. 5 at 30). Because Plaintiffs' ability to hold their events was dependent upon government approval of the event's program, the approval process was facially content-based. And because that approval process was a gateway through which Plaintiffs had to pass in order to access a designated public forum, the Court should find that the approval process violates Plaintiffs' Free Speech rights.

2.    The denials were viewpoint discrimination.

Even if the Court finds that the approval process does not facially violate Plaintiffs' Free Speech rights, the denials were an as-applied Free Speech violation because they they constitute viewpoint discrimination. Viewpoint discrimination is an "egregious form of content

discrimination" and occurs when the government targets not subject matter but particular views and is presumptively unconstitutional. *Rosenberger*, 515 U.S., at 829-30. This is true regardless of the forum. *Id.; Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384, 394 (1993).

When viewpoint discrimination is alleged, the Court must determine the purposes or motives of government officials. *Gay & Lesbian Students Ass'n v. Gohn*, 850 F.2d 361, 367 (8th Cir. 1988). A facially content-neutral restriction is still unconstitutional if there is evidence that an impermissible purpose or justification underpins it. *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 76 (2022); *see also Neighborhood Enterprises, Inc. v. City of St. Louis*, 644 F.3d 728, 737 (8th Cir. 2011) (a court is "not required to accept legislative explanations from a governmental entity regarding the purpose(s) for a restriction on speech without further inquiry") (internal quotes omitted).

Viewpoint discrimination occurs when—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed. *See Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 806 (1985) (the government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject). Plaintiffs' applied-for events in 2024 and 2025 were part of a years-long custom in which the Capitol Complex is used by various groups, both religious and secular, to commemorate the winter season. (PI Exs. 1 ¶ 9, 16; Iowa Admin Code r.11-100.4(4)). For the past two years, Defendants have singled out Plaintiffs for exclusion.

The denials were supported by "obviously unreasonable and pretextual" justifications, leaving viewpoint discrimination as the only viable explanation. *See Cuffley v. Mickes*, 208 F.3d

10

702, 711 (8th Cir. 2000) ("obviously unreasonable and pretextual" grounds to deny an application as viewpoint discrimination).

Steen initially offered no justification for denying Plaintiffs' 2024 Holiday Event. Instead, Steen coupled a flat denial with a mere citation to section 5.15 of the MOU and Iowa's administrative rules. (PI Ex. 1 ¶ 25; PI Ex. 2 at 92; PI Ex. 3 at 92). TST-Iowa promptly inquired into what the specific items at issue were, how the application was evaluated, and whether there was an appeals process. (PI Ex. 1 ¶ 26; PI Ex. 2 at 92; PI Ex. 3 at 92). After a follow-up, Steen responded that the application was "denied as submitted," adding that "[t]he cumulative circumstances that occur within the State Capitol building, including the presence of minors, coupled with the anticipation of costumes with sticks as weapons, positions the event to be harmful to minors." (PI Ex. 1 ¶ 27; PI Ex. 2 at 96; PI Ex. 3 at 96).

The administrative rule provides the director of IDAS with authority to deny use of facilities that, "in the director's judgment, would be disruptive of official state business or of the public health, safety and welfare" and is supposed to be based on "recommendations of the department of public safety, previous experience with the requesting group or other events similar to that requested." Iowa Admin Code r.11-100.4(5) The public records received to date indicate that IDAS only coordinated with the Iowa Governor's Office (IGOV). (PI Ex. 1 ¶ 24; PI Ex. 2 at 76; PI Ex. 3 at 76). There is no mention of coordination or consultation with the department of public safety. *See ibid.* The only prior experience between IDAS and TST-Iowa was when TST-Iowa's 2023 holiday display was vandalized. (PI Ex. 1 ¶ 11). TST-Iowa was the victim of a crime, not the perpetrator of one. *Id.* And no part of Steen's email or the public records suggests that Steen relied on a past experience with other Krampus costume contests, let alone past experience with TST-Iowa's event, in citing his purported safety concerns.

11

Section 5.15 of the MOU also provided no basis to refuse the event. That section reads in full:

Additional Limitation. Because the Capitol Complex is often a destination for children (persons under the age of eighteen) learning about their State government, *visual displays, sounds, and other actions that are harmful to minors, including, but not limited to, obscene materials (as defined in Iowa Code section 728.1(5)), and gratuitous violence or gore are not permitted at the Capitol Complex*. "Obscene material" is any material depicting or describing the genitals, sex acts, masturbation, excretory functions or sadomasochistic abuse which the average person, taking the material as a whole and applying contemporary community standards with respect to what is suitable material for minors, would find appeals to the prurient interest and is patently offensive; and the material, taken as a whole, lacks serious literary, scientific, political or artistic value. "Gratuitous violence or gore" means any depiction of severe bodily injury or blood, organs, or other bodily fluids, which the average person, taking the material as a whole and applying contemporary community standards with respect to what is suitable material for minors, would find appeals to the prurient interest and is patently offensive; and the material, taken as a whole, lacks serious literary, scientific, political or artistic value.

(PI Ex. 1 ¶ 25; PI Ex. 2 at 93; PI Ex. 3 at 93) (emphasis added). There was nothing sexual, much less "obscene," about the anticipated Krampus costumes. See PI Ex. 1 ¶ 23(d). Nor were there any expected depictions of gore. *See id.*

But in order to rule out the possibility that Steen was simply mistaken that Plaintiffs' "family-friendly" event would entail beating children with sticks in broad daylight, TST-Iowa patiently explained that no part of the event would "depict or describe genitals, sex acts, masturbation, excretory functions, or sadomasochistic abuse;" and that sticks, which were anticipated as part of Krampus costumes, "are a traditional costume component and for appearance only" which "were never intended to be used on anyone, and we never stated that they would be." (PI Ex. 1 ¶ 28; PI Ex. 2 at 97; PI Ex. 3 at 97). Plaintiffs even offered to omit the Krampus costume contest entirely and resubmit the application. *Id.* Defendants ignored their correspondence. *Id.*

12

The 2024 Memorandum of Understanding (PI Ex. 2 at 48-55; PI Ex. 3 at 48-55) specifies a list of items which are not allowed on the Capitol Complex. (*See* PI Ex. 2 at 50 § 5.14; PI Ex. 3 at 50 § 5.14). The list does not prohibit sticks. (*Id.*; PI Ex. 1 ¶ 29). Defendants wrongfully assumed that anyone wearing a Krampus costume would inevitably beat children. Even after being notified of the falsity of this assumption, Defendants held fast to that assertion in order to justify suppressing Plaintiffs' speech. Even when offered to omit the offending costume contest, Defendants insisted on suppressing Plaintiffs' speech. The only viable explanation is that the end goal was always to suppress Plaintiffs' speech; the "sticks" justification was nothing more than a transparent pretext.

The pretextual nature of Defendants' ongoing denials is also demonstrated by the difference between how Defendants evaluated and responded to the applications submitted by Plaintiffs versus applications by all other applicants. Plaintiffs' application in 2024 prompted an extensive evaluation process which has only ever been used against Plaintiffs. (PI Ex. 1 ¶ 46 *See, generally*, PI Ex. 18). No other religious groups have been denied access to the Capitol in a manner similar to TST-Iowa. (PI Ex. 1 ¶¶ 7, 8, 15). TST-Iowa was the only applicant subjected to this extremely heightened level of scrutiny over their application and the only applicant whose application was personally vetted by and denied by Steen. Defendants have permitted access to the forum by a number of groups who espouse other religious ideologies. (PI Ex. 1 ¶ 15). This inconsistent treatment of similarly situated speakers evinces the viewpoint discrimination at work in this case. *See Satanic Temple, Inc. v. Saucon Valley Sch. Dist.,* 671 F. Supp. 3d 555, 568 (E.D. Pa. 2023) (finding "TST credibly alleges the District rescinded approval of TST's application because of TST's "controversial viewpoint and [the] objectors' reaction to that viewpoint."); *see also, Robb v. Hungerbeeler,* 370 F.3d 735, 744 (8th Cir. 2004) (where KKK "was the only group

that [state's cited regulation] has ever been used to exclude, [it] strongly suggests that it has been used as a pretext to target the Klan group in a viewpoint-discriminatory manner").

The starkest evidence of viewpoint discrimination comes from Steen's subsequent public comments that his purpose was to prevent children from being exposed to Plaintiffs' viewpoint. (See PI Ex. 1 ¶ 34; PI Ex. 2 at 111, 119-122, 127-129, 140-41; PI Ex. 3 at 111, 119-122, 127-129, 140-41). "Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 448 (1985). At a campaign event on October 17, 2025, he expressly stated that his reasoning for canceling Plaintiffs' 2024 event was that the presence of a Baphomet display "could have been harmful for children *to see.*" (PI Ex. 1 ¶ 34(b); PI Ex. 2 at 111; PI Ex. 3 at 111) (emphasis added). Likewise, at a campaign event on November 24, 2025 he stated:

> One of the most divisive issues in the state over the last couple of years and the attempts of the so-called Satanic church has been denied again. *No more marketing to children. No more trying to get them to create Satanic symbols, sing Satanic hymns, partake in Satanic rituals. No more having youth involved in costume contests* and defending weapons used to abuse youth. *This is not religious expression. It's not free speech. It is evil right now.* The reasons I denied this event last year are the same reasons it was denied this year….The filth here in the state house is going to stay out of here this Christmas season,"

(PI Ex. 1 ¶ 34(c), PI Ex. 2 at 121; I Ex. 3 at 121) (emphasis added) (also available via YouTube at https://youtu.be/jDrGaZk4gtw) (last visited July 14, 2026). Each of these comments show that Steen ran afoul of the clearly established point that governments do not have a "free-floating power to restrict the ideas to which children may be exposed." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 794, n.3 (2011).

In 2025, Defendants did not even bother to provide a basis for denial, simply stating: "This request is not approved. If you have any questions, contact Director Campbell at mark.campbell@iowa.gov." (PI Ex. 4 at 47; PI Ex. 5 at 47). No explanation was needed. Steen

14

publicly stated that the basis for the 2025 denial was the same as the 2024 denial. (PI Ex. 1 ¶ 39; PI Ex. 2 at 119-122; PI Ex. 3 at 119-122); *available at:* https://youtu.be/jDrGaZk4gtw)("The reasons I denied this event last year are the same reasons it was denied this year.").

Plaintiffs' 2026 application followed the Iowa Office of Civil Rights' finding that there was probable cause to believe religious discrimination took place. (PI Ex. 1 ¶ 38; PI Ex. 2 at 203-204; 219-34; PI Ex. 3 at 203-204; 219-34). Defendants took 130 days to even respond to Plaintiffs' application, when the normal response time was 1-2 business days. (PI Ex. 1 ¶ 45; PI Ex. 8). The application is still pending after 159 days. Defendants' past unconstitutional action combined with the continued reliance on the same pretext supports Plaintiffs' need for injunctive relief. *See Murthy v. Missouri*, 603 U.S. 43, 59 (2024) (past wrongs make it "easier . . . to prove . . . a continued risk of future restriction that is likely to be traceable to that same defendant.").

The Court should find that Steen's proffered justification to deny Plaintiffs' 2024 event application was transparent pretextual. The review process, resulting in the denial, was uniquely applied to Plaintiffs. Only Plaintiffs have ever been excluded from the Capitol Complex in such a manner. The denial was rooted solely in facts that Steen concocted and then refused to retreat from after notice of falsity. On at least two occasions, Steen himself publicly stated that the purpose of his denial was to prevent children from being exposed to Plaintiffs' ideas. Steen himself explained that the 2024 pretextual denial was the same reason Plaintiffs were denied in 2025. And now Campbell has been delaying-for months- a decision on the 2026 application following the  OCR finding that there was probable cause to believe religious discrimination took place.

These facts overwhelmingly support a finding that Plaintiffs can clear the low threshold of a "likely" success on the merits of their free speech claims.

### B.  Plaintiffs are Likely to Succeed on the Free Exercise Claims.

Under the Free Exercise Clause of the First Amendment, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The Free Exercise Clause is applicable to the States through its incorporation into the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). A "neutral law of general applicability" is subject to rational basis review, even if it incidentally burdens a particular religious practice or belief. *Emp. Div., Dep't of Hum. Res of Or. v. Smith*, 494 U.S. 872, 878-79 (1990). But State actions that directly target religious conduct or identity are not "neutral" and are subject to strict scrutiny. *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 546 (1993) (prohibition on "all" killing of animals, except for sundry non-religious purposes, unconstitutionally prohibited animal sacrifice). Such restrictions must be justified by a compelling governmental interest, and must be narrowly tailored to advance that interest. *Id.* at 531. Neutrality and general applicability are interrelated, and a failure to satisfy one requirement is a likely indication that the other has also not been satisfied. *Id.* at 531. A law is not "generally applicable" if it invites the government to consider the particular reasons for a person's conduct by providing the government a mechanism to make individualized exemptions on a case-by-case basis. *Fulton v. City of Phila., Pa.*, 593 U.S. 522, 533 (2021).

The denials of Plaintiffs' holiday events did not just suppress protected speech, they more particularly suppressed unpopular religious speech, historically "among the favorite tools of petty tyrants." *Shurtleff v. City of Bos., Massachusetts*, 596 U.S. 243, 284–85 (2022) (Gorsuch, J., concurring). That denials under color of State law were not "neutral"; they were a "covert suppression of particular religious beliefs." *Church of Lukumi Babalu Aye*, 508 U.S. at 534. Years of public statements detailed above show a general public disapproval of Plaintiffs' religious

16

viewpoint, which is shared by the IDAS's decisionmakers. (*See generally,* PI Ex. 1 ¶¶ 10, 34; PI Ex. 2 at 104-113, 118-147; PI Ex. 3 at 104-113, 118-147; PI Ex. 11; PI Ex. 12; PI Ex. 13.)

The decision-making scheme of whether to "allow" religious expression is not constitutionally tolerable. Just as in *Cantwell,* Iowa Admin. Code r.11-100.4(5) incorporates a system of *ad hoc* decisions to allow or suppress religious activity based solely on the "judgment" of the IDAS director. Compare Iowa Admin. Code r.11-100.4(5) with *Cantwell*, 310 U.S. at 305. In *Cantwell*, this was held constitutionally intolerable because conditioning the perpetuation of religious views upon a license controlled by a government bureaucrat, "is to lay a forbidden burden upon the exercise of liberty protected by the Constitution." *Id.*, at 307. Steen's overt prohibition against Plaintiffs' "marketing to children," based on his finding that Plaintiffs' event "is not religious expression," is no different from the licensing scheme in *Cantwell*.

Because the denials are not neutral and purport to vest the director with the "discretion" to disallow religious exercise in a public place, they are presumptively unconstitutional and must survive strict scrutiny.

### C. The Denials Cannot Survive Strict Scrutiny.

As discussed above, strict scrutiny attaches under three separate analytical approaches: the denials were content-based decisions, a pretext for viewpoint discrimination, and an effort to suppress particular religious beliefs.

These denials do not even survive rational basis scrutiny. The real interest for the denials was a prohibited "desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *U. S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973). As made plain by the contemporary statements of the decision maker and legislators, the purpose of the denial was to deprive TST-Iowa of the opportunity to participate in the public sphere. As set forth above,

17

the denials were not narrowly tailored to serve any compelling interest and do not survive strict scrutiny.

In *Niemotko v. Maryland*, 340 U.S. 268 (1951), a religious group was denied a permit to use a city park, although other political and religious groups had been allowed to put the park to analogous uses. The Court held that the permit was denied because of the city's 'dislike for or disagreement with their views,' and violated the right to equal protection of the laws, in the exercise of those freedoms of speech and religion protected by the First and Fourteenth Amendments. *Id.* at 272. This case is identical. TST-Iowa's fundamental rights to speech and religious expression have been suppressed by Defendants who favored other religions over Satanism. Defendants have allowed other similarly situated groups to host religious events and express a religious message at the Capitol Rotunda while it has denied TST-Iowa the same opportunity to express their religious message. The conclusion is inescapable that Defendants violated the ultimate "fixed star in our constitutional constellation" that "no official, high or petty, can prescribe what shall be orthodox in … religion." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

These facts overwhelmingly support a finding that Plaintiffs can clear the low threshold of a "likely" success on the merits of their free speech and free exercise claims.

### D.  Plaintiffs are Likely to Succeed on the ICRA Claims.

Under the ICRA, "[i]t shall be an unfair or discriminatory practice for any ... manager ... of any public accommodation or any agent or employee thereof ... [t]o refuse or deny any person because of ...religion... in the furnishing of such accommodations, advantages, facilities, services, or privileges." Iowa Code § 216.7(1)(a). Section 216.2(13)(b) states that a public accommodation "includes each state and local government unit or tax-supported district of whatever kind, nature,

18

or class that offers services, facilities, benefits, grants, or goods to the public, gratuitously or otherwise." Id. § 216.2(13)(b). Here, IDAS is a "government unit" within the ICRA's definition of a "public accommodation." *See Good v. Iowa Dep't of Hum. Servs.*, 924 N.W.2d 853, 861 (Iowa 2019). And the public accommodation at issue is access to the Rotunda for the holiday event.

Under the ICRA, the court is empowered to "grant any relief in an action under this section which is authorized by section 216.15, subsection 9, to be issued by the agency." Iowa Code § 216.6. That subsection, in turn, grants the agency the power to "state its findings of fact and conclusions of law," and "issue an order requiring the respondent to cease and desist from the discriminatory or unfair practice and to take the necessary remedial action as in the judgment of the agency will carry out the purposes of this chapter." Iowa Code § 216.15(9). "Remedial action" includes "Extension to all individuals of the full and equal enjoyment of the advantages, facilities, privileges, and services of the respondent denied to the complainant because of the discriminatory or unfair practice." Iowa Code § 216.15(9)(a)(5). The district court may also award the respondent reasonable attorney fees and court costs when the court finds that the complainant's action was frivolous. This Court also has supplemental jurisdiction over Plaintiffs' ICRA claims and may grant a temporary injunction on these claims. *See* 28 U.S.C. § 1367(a).

A *prima facie* case of discrimination in public accommodation requires a showing the plaintiff (1) is a member of a protected class; (2) they sought to enjoy the accommodations of the public accommodation; and (3) they did not enjoy the accommodations because of discrimination in that (a) the individual was refused or denied the accommodations while similarly situated persons outside the protected class were not deprived of those services, or (b) the individual was allowed to use them but was otherwise subjected to markedly hostile conduct. *Kirt v. Fashion Bug #3253*, 479 F. Supp. 2d 938, 959 (N.D. Iowa 2007).

Plaintiffs are members of a protected class. TST is a religious group. (PI Ex. 1 ¶ 7). Adramelech is a Minister of Satan under TST. (*Id.* ¶ 3). He is therefore a member of a protected class based on his religion. *See Cave v. Jester*, 829 F. Supp. 3d 582, 669-671 (E.D. Ark. 2026)(finding TST is a *bona fide* religion and a suspect class for Equal Protection purposes). Plaintiffs sought public accommodations on three separate occasions by submitting the appropriate application to hold an event at the Iowa Capitol Building with IDAS. All three of these applications were denied by Defendants, who are the final arbitrators or "managers" of the public accommodation. Plaintiffs were denied use of public accommodations based on their religion or perceived religion.

The Iowa Office of Civil Rights ("IOCR") found that Plaintiffs made a *prima facie* case after the 2024 denial, noting the plausible pretextual nature of the Defendants' asserted basis to deny Plaintiffs the public accommodations they sought. (PI Ex. 1 ¶ 38; PI Ex. 2 at 203-204; 219-34; PI Ex. 3 at 203-204; 219-34). The discriminatory actions have continued since then. Accordingly, Plaintiffs are also likely to succeed on their claim that Defendants' discriminatory treatment of Plaintiffs in denying them use of the Capitol Rotunda on an ongoing basis violates the Iowa Civil Rights Act.

### E. Plaintiffs are Likely to Succeed on the Claims under the Iowa Religious Freedom Restoration Act.

Finally, Plaintiffs are likely to succeed on the merits of their state Religious Freedom Restoration Act[1] claim. The plain text of the statute is violated by the Defendants' Under Iowa RFRA, state action shall not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless the government demonstrates that applying the

---

[1] Iowa passed the Religious Freedom Restoration Act in 2024, and Plaintiffs are aware of no cases decided under the new law by state or federal courts. Iowa Code § 675.4 (2024).

burden to the religious exercise is the least restrictive means of furthering a compelling governmental interest. Iowa Code § 675.4 (2024). Iowa's RFRA specifically vests the court with authority to grant injunctive relief. *Id.*

Here, Defendants' ongoing denial of Plaintiffs' applications constitutes a substantial burden on their exercise of religion because it excluded them from government facilities. As a result of the denials, Plaintiffs were unable to host any holiday gathering in 2024 and were required to expend more time and money to secure an alternative location for their holiday gathering in 2025. (PI Ex. 1 ¶ 40; PI Ex. 17). For both years, they lost the opportunity to engage with the public about their religion that the Rotunda event would have provided. The ability to engage with and educate the public is an important facet of their religious exercise. (PI Ex. 1 ¶ 8). For the reasons already set forth at length above, no compelling state interest in restricting Plaintiffs on the basis of their religious viewpoint and exercise exists; nor is the ongoing denial the least restrictive means. Indeed, Plaintiffs even had offered to remove the costume contest that Defendants pointed to, without any legitimate basis, to support their assertion that the event would be harmful to minors. (PI Ex. 1 ¶ 28; PI Ex. 2 at 97; PI Ex. 3 at 97). While nothing should have required Plaintiffs to do so, their offer constituted a significantly less restrictive means of furthering the state's asserted interest, and was nonetheless rejected. As a result, Plaintiffs are likely to succeed on the merits of this claim.

## II. THE REMAINING PRELIMINARY INJUNCTION FACTORS ALL WEIGH IN FAVOR OF GRANTING PLAINTIFF PRELIMINARY INJUNCTIVE RELIEF

Because Plaintiffs have demonstrated a likelihood of success on their First Amendment claims, the Court could find that all other *Dataphase* factors are satisfied and weigh in Plaintiffs'

favor. *Schmitt*, 148 F.4th at 970. In an abundance of caution, Plaintiffs briefly address each element below.

### A. Plaintiffs Have Suffered Irreparable Harm and Will Experience Further Harm Absent an Injunction.

The loss of constitutional rights "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "It is well-established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Schmitt*, 148 F.4th at 70–71; *Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025).

Plaintiffs are facing the ongoing loss of First Amendment freedoms, not for a minimal period of time but for two years and counting. They have lost opportunities to engage in expressive activity and exercise their religion freely at the Capitol Rotunda.

### B. The Balance of Equities and Public Interest Weighs in Favor of a Preliminary Injunction.

When the government is the opposing party, the final two factors—balancing the weight of the injuries and the public interest—necessarily merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1018 (8th Cir. 2023). "It is always in the public interest to protect constitutional rights." *Schmitt v. Rebertus*, 148 F.4th 958, 970 (8th Cir. 2025) (quoting *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019), and "the balance of the equities generally favors the constitutionally-protected freedom of expression." *Id*. When balancing equities to decide whether to grant an injunction, courts generally ask whether the balance of equities favors the movant such that justice requires the court to intervene to preserve the status quo until the merits are determined. *Nebraska v. Biden*, 52 F.4th 1044, 1046 (8th Cir. 2022); *Morehouse Enters.*, 78 F.4th at 1016.

22

Protecting Plaintiff's First and Fourteenth Amendments is undoubtedly in the public interest. *D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 1004 (8th Cir. 2019) ("[I]t is always in the public interest to protect constitutional rights."). The harms suffered by Plaintiffs, the loss of their constitutional rights to free speech and religious exercise, and statutory rights under the ICRA and Iowa RFRA, far outweigh any potential administrative burden imposed on IDAS by requiring them to process Plaintiffs' application on an equal basis with those submitted by other groups or members of the public. Because the protection of constitutional rights is of high public interest and the balance of equities generally favors freedom of expression, the balance of harms and public interest weigh in favor of granting an injunction.

## CONCLUSION

Plaintiffs are likely to succeed on their claims, and without an injunction, Plaintiffs will continue to suffer an unconstitutional burden on their First Amendment and Fourteenth Amendment rights to free speech and free exercise, and the violation of their statutory rights under the ICRA and RFRA. Such a burden unquestionably constitutes irreparable injury. And an injunction here would be both equitable and in the public interest.

For the foregoing reasons, this Court should grant TST-Iowa's Motion for Preliminary Injunction.

Respectfully submitted this 13th day of August 2026.


/s/ Shefali Aurora
Shefali Aurora, AT00012874

/s/ Rita Bettis Austen
Rita Bettis Austen, AT0011558

/s/ Thomas Story
Thomas Story, AT0013130

ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Ste. 808
Des Moines, IA 50309–2317
Telephone: (515) 243-3988
Fax: (515) 243-8506
Email: Shefali.Aurora@aclu-ia.org
Email: Rita.Bettis@aclu-ia.org
Email: Thomas.Story@aclu-ia.org


 /s/ Emily E. Wilson
Emily E. Wilson        AT0013860


 /s/ Melissa C. Hasso
Melissa C. Hasso        AT0009833

HASSO & WILSON LAW FIRM
111 E. Grand Ave., Suite 212
Des Moines, IA 50309
Telephone: (515) 224-2079
Fax: (515) 224-2321
Email: ewilson@hwlawiowa.com
Email: mhasso@hwlawiowa.com


/s/Matt Kezhaya
Matt Kezhaya
(*Application for admission pro hac vice forthcoming.*)


Kezhaya Law PLC
150 S. Fifth St., Suite 1850
Minneapolis, MN 55402
Telephone: (612) 276-2216
Fax: matt@kezhaya.law


## CERTIFICATE OF SERVICE


I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of Court

by using the CM/ECF system.

The foregoing paper and attachments will also be served along with the Complaint and Summons

to all Defendants.

Date: August 13, 2026


/s/ Shefali Aurora
Shefali Aurora, AT00012874

ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Ste. 808
Des Moines, IA 50309–2317
Telephone: (515)243-3988
Fax: (515) 243-8506
Email: Shefali.Aurora@aclu-ia.org