Congressional Research Service
Informing the legislative debate since 1914

EXHIBIT
B

IN FOCUS

October 25, 2023

# What Is a "Church" for Federal Tax Purposes?

Entities that are "churches" under Internal Revenue Code (IRC) Section 170(b)(1)(A)(i) also qualify as "religious organizations" under IRC Section 501(c)(3), and thus are generally exempt from the federal income tax under IRC Section 501(a). However, "churches" receive additional tax benefits that make it more advantageous for an organization to qualify as a "church" under IRC Section 170(b)(1)(A)(i), than merely as a "religious organization." For example, churches are generally subject to fewer filing obligations and receive special procedural protections during audits. Congress has not defined "church" in the IRC, and the Department of the Treasury and Internal Revenue Service (IRS) have not defined the term in regulations corresponding to IRC Section 170. Courts have stated that the additional statutory allowances provided to churches indicate that Congress intended the term "church" to have a more restrictive definition than "religious organization." Over time, courts and the IRS have developed several tests and applied a number of factors to determine whether an organization qualifies for church status. In applying these tests and factors, courts and the IRS have routinely avoided evaluating an organization's beliefs. Accordingly, "church," as used in the IRC, is not limited to a particular faith, denomination, sect, ritual, or practice, and can include several houses of worship.

This In Focus reviews how courts and the IRS determine when a religious organization is a "church" for the purpose of federal income tax exemption.

## Qualification Under IRC Section 501(c)(3)

Churches must first qualify for federal income tax exemption under IRC Section 501(c)(3). To so qualify, (1) the organization must be organized and operated exclusively for religious, educational, scientific, or other charitable purposes; (2) the organization's net earnings may not inure to the benefit of any private shareholder or individual; (3) no substantial part of an organization's activities may be attempting to influence legislation; and (4) the organization may not intervene in any political campaign on behalf of (or in opposition to) any candidate for public office.

Relying on the Supreme Court's decision in *Bob Jones University v. United States*, 461 U.S. 574 (1983), the IRS asserts that there is another requirement for exemption from the federal income tax under IRC Section 501(c)(3)—an organization's purpose and activities must not be illegal or violate fundamental public policy. In *Bob Jones University*, the Supreme Court upheld the IRS's revocation of a university's 501(c)(3) status because the university had a disciplinary rule that prohibited interracial dating and marriage, which was in violation of federal public policy. The disciplinary rule, carried out on the basis of the university's religious beliefs, called for students to be expelled if they dated outside their race, were in an interracial marriage, or encouraged others to violate the disciplinary rule. The university also denied admission to applicants in an interracial marriage or known to advocate for interracial marriage or dating.

The Court "analyzed and construed [IRC Section 501(c)(3)] within the framework of the [IRC] and against the background of congressional purposes." Its examination revealed that

> underlying all relevant parts of the [IRC], is the intent that entitlement to tax exemption depends on meeting certain common-law standards of charity—namely, that an institution seeking tax-exempt status must serve a public purpose and not be contrary to established public policy.

The government's compelling interest in eradicating racial discrimination in educational institutions substantially outweighed "whatever burden denial of tax benefits" placed on the university's exercise of its religious beliefs, which were otherwise substantially protected by the First Amendment's Free Exercise Clause. The Court also noted that the IRS's policy was founded on a neutral, secular basis, and did not violate the First Amendment's Establishment Clause.

An organization that is organized and operated exclusively for religious purposes and satisfies the rest of IRC Section 501(c)(3)'s requirements is a "religious organization."

## The *De La Salle* Approach

In *De La Salle Institute v. United States*, 195 F. Supp. 891 (N.D. Cal. 1961), a district court determined that in the absence of congressional guidance, the term "church" is to be interpreted in light of its common usage and meaning. Applying this approach, the district court said "[a]n organization established to carry out 'church' functions, under the general understanding of the term, is a 'church.'" In decisions after *De La Salle*, courts have declined to adopt this approach. Some courts have expressed doubt about the soundness of the *De La Salle* approach given the plurality of religious beliefs, the range of organized activities undertaken, and the assortment of church structures in the United States.

## The IRS's 14 Criteria

In 1978, the IRS announced a list of 14 criteria to evaluate whether a religious organization qualifies as a "church." The 14 criteria are (1) a distinct legal existence; (2) a recognized creed and form of worship; (3) a definite and distinct ecclesiastical government; (4) a formal code of

doctrine and discipline; (5) a distinct religious history; (6) a membership not associated with any other church or denomination; (7) an organization of ordained ministers; (8) ordained ministers selected after completing prescribed courses of study; (9) literature of its own; (10) established places of worship; (11) regular congregations; (12) regular religious services; (13) Sunday schools for the religious instruction of the young; and (14) schools for preparing ministers. Courts and the IRS generally use these 14 criteria as a guide along with any other facts and circumstances that may bear on an organization's claim that it is entitled to church status.

Some courts have questioned the mechanical application of the IRS's 14 criteria to varied religious practices and a diverse group of religious organizations. For example, in *Spiritual Outreach Society v. Commissioner*, T.C. Memo 1990-41, the Tax Court acknowledged that the 14 criteria may be inapplicable to certain organizations, such as newly created rural organizations. To address these concerns, some courts, including the Tax Court, have placed special emphasis on four of the IRS's 14 criteria: (1) the existence of an established congregation served by an organized ministry; (2) the provision of regular religious services; (3) religious education for the young; and (4) the dissemination of a doctrinal code. In *Foundation of Human Understanding v. Commissioner*, 88 T.C. 1341 (1987) (*Foundation I*), the Tax Court explained it must take care when determining whether an organization is a "church" because "all of us are burdened with the baggage of our own unique beliefs and perspectives." As a consequence, the Tax Court stated that it must "assiduously avoid" inquiry into the merits of an organization's beliefs, or risk running afoul of First Amendment religious protections. The IRS, in Internal Revenue Manual 4.75.39.4(1), has acknowledged that First Amendment concerns may limit its ability to evaluate "the source and content of sincerely held religious beliefs" as well.

## Associational Test

While the IRS has stated no one factor has controlling weight, some courts have ruled that a religious organization must serve an associational role to qualify as a church. In the frequently cited case, *American Guidance Foundation, Inc. v. United States*, 490 F. Supp. 304 (D.D.C. 1980), a district court articulated the associational test: "At a minimum, a church includes a body of believers or communicants that assembles regularly in order to worship." The district court explained,

> [u]nless the organization is reasonably available to the public in its conduct of worship, its educational instruction, and its promulgation of doctrine, it cannot fulfill this associational role.

Several courts have since adopted this threshold standard and fine-tuned it. When the Tax Court applied the associational test in *Foundation I*, it clarified that,

> [w]hen bringing people together for worship is only an incidental part of the activities of a religious organization, those limited activities are insufficient to label the entire organization a church.

In *Foundation I*, a large percentage of the religious organization's total receipts and expenditures went toward broadcast and publishing efforts that had the potential to reach millions of people. Even so, the Tax Court ruled in favor of the religious organization. The Tax Court found the religious organization's associational aspects were "more than incidental," and thus satisfied the associational test, because there was an ordained ministry that conducted regular religious services for congregations consisting of 50 to 350 persons at established places of worship.

A federal court of appeals upheld the IRS's revocation of the same organization's church status in a later case, *Foundation of Human Understanding v. United States*, 614 F.3d 1383 (Fed. Cir. 2010) (*Foundation II*). In *Foundation II*, the organization failed to establish that it held regular services with a regular congregation during the years at issue. The organization argued that it served an associational role through its "virtual congregation," which listened to sermons over broadcast and the internet at set times. The court held that the organization's "electronic ministry" did not satisfy the associational test. The court concluded that the organization did not serve an associational role when it disseminated religious information through print or broadcast media or through its call-in show, because these forums did not provide "individual congregants with the opportunity to interact and associate with each other in worship."

## Considerations for Congress

Congress has left the question of how to distinguish "churches" from other religious organizations for tax purposes largely to the courts and the IRS. Some courts have suggested that First Amendment considerations have hindered legislation in this area. Over time, courts and the IRS have seemed to settle on relying on the IRS's 14 criteria and the associational test. Some tax commentators have critiqued the IRS's 14 criteria as being unpredictable, outmoded, and of limited application to all but a few religious practices. While some of these commentators have called for the abandonment of the IRS's 14 criteria and for the adoption of the associational test, tax commentators have raised concerns about that test as well. Tax commentators have questioned how the associational test should apply today, given the rise in virtual religious services and changes in technology that allow for members of religious organizations to interact and associate with each other in new ways. Congress may continue to permit courts and the IRS to refine the criteria by which "church" status is determined or it may attempt to clarify through legislation the definitional standard that should be applied to assess whether an organization is a "church" for tax purposes.

**Milan N. Ball**, Legislative Attorney

IF12520

## Disclaimer

This document was prepared by the Congressional Research Service (CRS). CRS serves as nonpartisan shared staff to congressional committees and Members of Congress. It operates solely at the behest of and under the direction of Congress. Information in a CRS Report should not be relied upon for purposes other than public understanding of information that has been provided by CRS to Members of Congress in connection with CRS's institutional role. CRS Reports, as a work of the United States Government, are not subject to copyright protection in the United States. Any CRS Report may be reproduced and distributed in its entirety without permission from CRS. However, as a CRS Report may include copyrighted images or material from a third party, you may need to obtain the permission of the copyright holder if you wish to copy or otherwise use copyrighted material.