IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| The Satanic Temple, Inc., and Mortimer Adramelech,<br><br>Plaintiffs,<br><br>vs.<br><br>Mark Campbell, Director of the Iowa Department of Administrative Services, *in his official and individual capacities*, Adam Steen, former Director of the Iowa Department of Administrative Services, *in his individual capacity,* and the Iowa Department of Administrative Services,<br><br>Defendants. | Case No. 4:26-cv-336<br><br>**RESISTANCE TO DEFENDANTS' MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY REGARDING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiffs, The Satanic Temple and Mortimer Adramelech, by and through counsel, respectfully submit this Resistance to Defendants' Motion for Leave to Conduct Limited Discovery Regarding Plaintiffs' Motion for Preliminary Injunction.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. The Motion Is A Meritless Delay Tactic. ........ 2

II. Defendants' Arguments About Religiosity Fail. ........ 4

A. Politically active organizations can be "religious." ........ 5

B. Nontheistic organizations can be "religious." ........ 7

III. The Discovery Demands Are Not Narrowly Tailored To Sincerity. ........ 7

A. The discovery demands seek evidence of non-compliance with tax law. ........ 8

B. The discovery demands seek to chill TST's right of free association. ........ 9

C. The remaining discovery requests have no relevance to sincerity. ........ 10

IV. The Free Speech Claim Applies Regardless Of Religious Sincerity. ........ 12

CONCLUSION ........ 13

## TABLE OF AUTHORITIES

**Cases**

*Alvarado v. City of San Jose*, 94 F.3d 1223 (9th Cir. 1996) ........ 3

*Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) ........ 9, 10

*Arnett v. Kennedy*, 416 U.S. 134 (1974) ........ 8

*Cath. Charities Bureau, Inc. v. Wis. Lab. & Indus. Rev. Comm'n*, 605 U.S. 238 (2025) ........ 5

*Cave v. Jester*, 829 F. Supp. 3d 582 (E.D. Ark. 2026) ........................................................3, 7, 11

Discovery Order, *Cave v. Jester*, No. 4:18-cv-00342, Dkt. No. 116 (E.D. Ark. Mar. 1, 2020) ..........................................................................................................................11

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)..............................13

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010)....................................................6

*Dorrah v. United States*, 282 F.R.D. 442 (N.D. Iowa 2012) ..........................................................1

*Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1 (1947)...............................................................5

*First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114 (2026) ..........................8, 10

*Flanagan v. State*, 109 Nev. 50 (1993)..........................................................................................12

*Malnak v. Yogi*, 592 F.2d 197 (3d Cir. 1979) .............................................................................5, 7

*McDaniel v. Paty*, 435 U.S. 618 (1978)..........................................................................................6

*Monsanto Co. v. Woods*, 250 F.R.D. 411 (E.D. Mo. 2008)............................................................1

*NAACP v. Ala., ex rel. Patterson*, 357 U.S. 449 (1958) ...........................................................9, 10

*Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517 (9th Cir. 1994) ...........................................4

*Progressive Cas. Ins. v. F.D.I.C.*, 283 F.R.D. 556 (N.D. Iowa 2012)...........................................1

*Rapid Refill, LLC v. JDDK, Inc.*, 2014 WL 12581758 (N.D. Iowa July 17, 2014)....................2, 7

*Satanic Temple, Inc. v. City of Scottsdale*, 2020 WL 587882 (D. Ariz. Feb. 6, 2020)..........3, 7, 11

*Satanic Temple, Inc. v. Saucon Valley Sch. Dist.*, 671 F. Supp. 3d 555 (E.D. Pa. 2023) ..........3, 12

*Seneca Companies, Inc. v. D&H United Fueling Solutions, Inc.*, 2024 WL 4884439 (S.D. Iowa Mar. 28, 2024)..................................................................................................................................1

*Serbian E. Orthodox Diocese for United States and Canada v. Milivojevich*, 426 U.S. 696 (1976) ..........................................................................................................................................3

*Shurtleff v. City of Boston*, 596 U.S. 243 (2022) ............................................................................6

*Spiritual Outreach Soc. v. C.I.R.*, 927 F.2d 335 (8th Cir. 1991) .............................................10, 11

*St. Pierre v. United States*, 319 U.S. 41 (1943) .............................................................................13

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707 (1981)................................................12

*Torcaso v. Watkins*, 367 U.S. 488 (1961) ........ 7

*Wallace v. Jaffree*, 472 U.S. 38 (1985) ........ 7

*Watson v. Jones*, 80 U.S. 679 (1872) ........ 5

**Constitutional Amendments**

U.S. Const. amend. I ........ passim

**Statutes**

26 U.S.C. § 170(b)(1)(A)(i) ........ 8, 11

26 U.S.C. § 501(c)(3) ........ 5, 6, 7

26 U.S.C. § 6033(a)(3)(A)(i) ........ 11

**Other Authorities**

Laurence H. Tribe, American Constitutional Law (1978) ........ 6

## INTRODUCTION

Defendants, without discussion, ask this Court to apply the "good cause" test, as opposed to the "preliminary injunctive relief" test, to determine if discovery should be allowed in this case. (Dkt. 18 ¶ 13). "Good cause" to support expedited discovery requires Defendants to show a need, in consideration of the administration of justice, which outweighs the prejudice imposed on the responding party. *See Monsanto Co. v. Woods*, 250 F.R.D. 411 (E.D. Mo. 2008). If this Court agrees with Defendants, and uses the "good cause" test, it should deny the motion because Defendants fail to present any good cause for their proposed discovery demands. *Id.* at *1. If the Court finds the "preliminary injunctive relief" test to be more appropriate, Defendants' motion should still be denied for failure to address any of the elements. "Expedited discovery is not the norm." *Seneca Companies, Inc. v. D&H United Fueling Solutions, Inc.*, No. 4:24-cv-0023, 2024 WL 4884439, at *2 (S.D. Iowa Mar. 28, 2024) (quoting *Dorrah v. United States*, 282 F.R.D. 442, 445 (N.D. Iowa 2012)); *see also Progressive Cas. Ins. v. F.D.I.C.*, 283 F.R.D. 556, 557 (N.D. Iowa 2012) (noting past cases in which good cause was found involved "very limited" discovery necessitated by "a dying witness" or a "need to collect seed samples" before they were destroyed).

## ARGUMENT

For three reasons, Defendants' motion fails to present good cause to engage in expedited discovery: (1) the motion is a meritless delay tactic; (2) the motion purports to support a failed inquiry into religiosity–organizations can be religious even if they are nontheistic and are comprised of politically aware adherents; and (3) the proffered discovery demands are not narrowly tailored to the asserted need for discovery but are instead designed to chill TST's associational rights. Alternatively, the Court could find that the request is moot because (4)

Defendants do not contend that discovery is needed for preliminary injunctive relief under the Free Speech Clause.

**I. The Motion Is A Meritless Delay Tactic.**

The Court should deny Defendants' motion because it is a meritless delay tactic. *See Rapid Refill, LLC v. JDDK, Inc.*, 2014 WL 12581758, at *3 (N.D. Iowa July 17, 2014) (noting, in determining the reasonableness of expedited discovery, commonly considered factors of "whether a preliminary injunction is pending" and "the purpose for requesting the expedited discovery"). Plaintiffs' pending motion for preliminary injunction seeks relief that, if not granted sufficiently ahead of the holiday event scheduled on December 12, 2026, will be lost forever. Defendants mischaracterize the breadth and complexity of their discovery requests to suggest that discovery, briefing on the preliminary injunction motion, an evidentiary hearing, and a decision could all be completed within this limited timeframe. (Dkt. 18 ¶ 21). Under Defendants' proposed timeline, even if it were reasonable to demand that Plaintiffs complete this burdensome and unnecessary discovery within 14 days (it is not), and even if Defendants then completed their resistance briefing within 14 days thereafter, the evidentiary hearing set for October 6, 2026 would likely still need to be continued. Defendants know this. Realistically, by the time the requested discovery would be completed and a new hearing scheduled, the date for the planned event would have come and gone, and Defendants would have been granted yet another pocket veto on Plaintiffs' constitutional and civil rights.

Defendants' motion lacks factual support and is meant only to delay, and effectively deny, the much needed relief sought by Plaintiffs. It is largely predicated on internet hearsay from unrelated, non-Plaintiff Satanic sects, not from TST or its authorized agents. (*See* Dkt. 18 ¶26(c)) (quoting David Johnson, of QueerSatanic, an entirely different sect of Satanism which considers

itself a competitor of TST, and which frequently criticizes TST on the internet); ¶ 26(d) (quoting "Adam," an attendee at an event hosted by the Kansas City Atheist Coalition, not by TST, who merely described himself as an "admirer" of TST); ¶ 26(e) (quoting another attendee of that non-TST event who disclaimed affiliation with TST but merely added agreement with TST's philosophical approach); and ¶ 26(j) (quoting a "leader of the Church of Satan," another entirely unaffiliated Satanic sect). Less than six months ago, the most recent court to assess TST's religiosity declined to consider similar internet hearsay. *See Cave v. Jester*, 829 F. Supp. 3d 582, 620 n.106, 669 (E.D. Ark. 2026) (refusing to consider newspaper hearsay as grounds for a genuine fact dispute about TST's religiosity). Regardless, Defendants' ignorance of Plaintiffs' religious organization and beliefs does not warrant the request for this Court to wade into a religious dispute over who the "real" Satanists are. *See, e.g., Serbian E. Orthodox Diocese for United States and Canada v. Milivojevich*, 426 U.S. 696, 709 (1976) (the Establishment Clause generally prohibits courts from engaging in schismatic disputes); *see also Alvarado v. City of San Jose*, 94 F.3d 1223, 1227 (9th Cir. 1996) ("Attempting to define religion, in general and for the purposes of the Establishment Clause, is a notoriously difficult, if not impossible, task."). Defendants' Motion is unnecessary, and certainly not worthy of delaying Plaintiffs' requested emergency relief. The question Defendants want to ask has already been answered by the courts time and again. *See*, *e.g.*, *Cave*, 829 F. Supp. at 669-72 (granting summary judgment that TST is a religion); *Satanic Temple, Inc. v. Saucon Valley Sch. Dist.*, 671 F. Supp. 3d 555, 559 (E.D. Pa. 2023) (repeatedly referencing TST's religiosity, notwithstanding its "controversial views on religion and the community's negative reactions thereto"); *Satanic Temple, Inc. v. City of Scottsdale*, 2020 WL 587882, at *7 (D. Ariz. Feb. 6, 2020) (after a bench trial, finding TST is a religion). Yet now they ask this Court to answer the question knowing that it might cause a delay and deny relief to Plaintiffs.

Defendants' intent to delay relief to Plaintiffs is further shown by the incredible breadth of their proposed discovery requests. Among other demanded categories of documents, Defendants seek to conduct a forensic accounting of Plaintiffs' financial books, seeking records of all revenues, expenditures, and charitable contributions over the preceding three years; documentation of every religious service held, worldwide and in Iowa, since the beginning of 2023. (Dkt. 18-4 at 5-6). These proffered requests are neither a "small[] measure" nor "limited," as Defendants claim in their motion. (Dkt. 18 ¶¶ 34, 37). They are designed to trigger a claim of associational privilege and ensuing discovery litigation, which is further briefed in Part III. All this effort is to delay a simple question about whether Plaintiffs are entitled to access a designated public forum.

The timing, lack of support, and scope of Defendants' requested discovery all illustrate that Defendants' requests are designed to stall the proceedings on Plaintiffs' Motion for Preliminary Injunction, and are further evidence that they have no intention of signing the Memorandum of Understanding or otherwise allowing the event on December 12, 2026 to proceed. The Court should deny the motion for this reason alone.

## II. Defendants' Arguments About Religiosity Fail.

The Court should deny Defendants' motion for expedited discovery because their arguments about religiosity fail. Defendants argue that TST cannot be a "real" religion either because TST once described itself as an "association of politically aware Satanists, secularists, and advocates for individual liberty" or because it rejects a belief in the supernatural. (Dkt. 18 ¶¶ 22, 23). As more fully discussed below, both arguments are precluded by well-settled law.

To preface, Defendants' argument carries a constitutionally concerning corollary: if TST was not a "real" religion, then the force of government could be wielded to advance the propagation of its ideas. *See Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517 (9th Cir. 1994)

(high school biology teacher had no constitutional right to refuse to teach "evolutionism" because evolution is a scientific theory, not a religion); *see also Malnak v. Yogi*, 592 F.2d 197, 212-13 (3d Cir. 1979) (Abrams, J., concurring) (if new religions do not qualify for Free Exercise protections, then they must be eligible for government endorsement; "The rose cannot be had without the thorn.")

Obviously, Iowa cannot constitutionally preach, and the Court would not find, that there is a real supernatural figure called Satan (*i.e.*, TST is "wrong") any more than it can constitutionally preach the opposite, that there is *no* real supernatural figure called Satan (*i.e.*, TST is "right"). Endorsing either view would violate the First Amendment, which "requires the state to be neutral in its relations with groups of religious believers and non-believers … State power is no more to be used so as to handicap religions, than it is to favor them." *Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 18 (1947). Our constitutional system restrains governments from endorsing particular religious viewpoints because each of us has the right to decide for ourselves what constitutes religious truth, without government interference. *Cath. Charities Bureau, Inc. v. Wis. Lab. & Indus. Rev. Comm'n*, 605 U.S. 238, 249 (2025) ("[t]he law knows no heresy, and is committed to the support of no dogma.") (quoting *Watson v. Jones*, 80 U.S. 679, 728 (1872). Defendants' arguments undermine our constitutional tradition, asserting instead that certain beliefs about matters of indisputably religious significance are not entitled to conscience protections. The Court should reject this argument.

A. Politically active organizations can be "religious."

Defendants' motion rests on the faulty premise that an organization cannot engage in political advocacy while also being "religious," or perhaps tax-exempt under 26 U.S.C. § 501(c)(3). (Dkt. 18 ¶ 18). The law emphatically allows religious organizations to participate in all

aspects of public life. That includes participating in public forums (like the Capitol Complex), even though one has a religious viewpoint. *Shurtleff v. City of Boston*, 596 U.S. 243 (2022). That also includes participating in the judicial process, and all other manners of "public programs, benefits, facilities, and the like." *Id.*, 596 U.S. at 261 (Kavanaugh, J., concurring). And it emphatically includes participation in the political process. *McDaniel v. Paty*, 435 U.S. 618, 641 n.25 (1978) (Brennan, J., concurring):

> American courts have not thought the separation of church and state to require that religion be totally oblivious to government or politics; church and religious groups in the United States have long exerted powerful political pressures on state and national legislatures, on subjects as diverse as slavery, war, gambling, drinking, prostitution, marriage, and education. To view such religious activity as suspect, or to regard its political results as automatically tainted, might be inconsistent with first amendment freedoms of religious and political expression—and might not even succeed in keeping religious controversy out of public life, given the 'political ruptures caused by the alienation of segments of the religious community.'

(quoting L. Tribe, *American Constitutional Law* § 14–4 (1978)). Despite this, Defendants levy a not-so-veiled threat of "collateral federal consequences" because TST's co-founder had the audacity to publicly declare that TST will participate in an Oklahoma school chaplaincy program if Oklahoma passes a bill to allow school chaplains, or advocated for people to reevaluate whether they have a rational basis for the political beliefs they hold, or decried a Florida governor's legally unsubstantiated claim that Satanic chaplains would be unqualified for a Florida school-chaplain bill. (Dkt. 18 ¶ 31). This is all protected speech of the highest order. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 365 (2010) ("No sufficient governmental interest justifies limits on the political speech of nonprofit or for-profit corporations.")

None of this advocacy undermines TST's tax-exempt status under 26 U.S.C. § 501(c)(3). The Johnson Amendment, to which Defendants refer but misunderstand, only specifically

prohibits 501(c)(3) organizations from advocating "on behalf of (or in opposition to) any *candidate for public office*." 26 U.S.C. § 501(c)(3) (emphasis added). A specific cause, like school chaplains, is not a candidate.

B. Nontheistic organizations can be "religious."

Defendants' motion also relies on an incorrect proposition that an ideology cannot be "religious" unless it advocates for a belief in the supernatural. (*See, generally*, Dkt. 18 ¶¶ 23, 26). The Supreme Court has expressly rejected the proposition that a belief in the supernatural is elemental to the conscience protections enshrined in the Free Exercise Clause. *Wallace v. Jaffree*, 472 U.S. 38, 53 (1985) ("the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith *or none at all*") (emphasis added).

If a subscription to a particular deity were elemental to a finding of "religiosity," as Defendants implicitly claim, millions of Americans would be excluded from basic Free Exercise protections–*i.e.,* adherents of, among others, Buddhism, Taoism, and Secular Humanism. *Torcaso v. Watkins*, 367 U.S. 488, 495–96 n.11 (1961). Of course, that is not the case. *Id.* And it has not been the case since the early 20th Century. *See Malnak v. Yogi*, 592 F.2d 197, 207 (3d Cir. 1979) (Adams, J., concurring). As more particularly applied to TST, two federal courts have expressly held that TST is a bona fide "religion" notwithstanding that its ideology asserts the non-existence of the divine. *Cave*, 829 F. Supp. 3d at 669-72; *Scottsdale*, 2020 WL 587882, at *6. The Court should deny Defendants' motion for expedited discovery on this basis because it is meritless and rooted in a false dichotomy between supernaturalism and religiosity.

**III. The Discovery Demands Are Not Narrowly Tailored To Sincerity.**

The Court should deny Defendants' motion for expedited discovery because the proffered discovery requests are untethered to the asserted need for discovery. *See Rapid Refill*, 2014 WL

12581758, at *3 (noting factors of "the breadth of the discovery requests" and "the burden on the [responding party] to comply with the requests"). Purportedly, Defendants seek expedited discovery to oppose the evidence of TST's and Adramelech's sincerity of belief. (Dkt. 18 ¶ 9). But as argued fully below, the discovery requests are an unduly invasive effort to ascertain the identities of TST's membership and ministry, both nationally and in Iowa. They also serve Defendants' misplaced goal to second-guess the IRS's ruling letter that TST is a "church" under 26 U.S.C. § 170(b)(1)(A)(i). None of the Defendants are empowered to enforce the federal tax code or the IRS's regulations on charities. Defendants' requests are tailored to chill TST's freedom of association, not to determine the sincerity of TST's religiosity.

A. The discovery demands seek evidence of non-compliance with tax law.

Defendants' motion and proffered discovery requests do not seek evidence of sincerity, but rather of non-compliance with tax regulations. (*See* Dkts. 18-4; 18 ¶ 31) (warning of possible "collateral federal consequences" if TST's discovery responses do not meet Defendants' satisfaction); *see generally First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1127 (2026) ("[T]he value of a sword of Damocles is that it hangs–not that it drops.") (quoting *Arnett v. Kennedy*, 416 U.S. 134, 231 (1974) (Marshall, J., dissenting)). Defendants helpfully supplied the IRS's designation of TST as a "church." (*See* Dkt. 18-1) ("Public Charity Status: [IRC §] 170(b)(1)(A)(i)") (full copy available as I.R.S. Priv. Ltr. Rul. 947 (Feb. 6, 2019), https://apps.irs.gov/pub/epostcard/dl/FinalLetter_823404757_THESATANICTEMPLE_05142018_01.tif). Yet the stated basis for Defendants' discovery requests was to track the IRS's criteria in issuing that ruling. (Dkt. 18 ¶ 30). Because Defendants are not charged with enforcing the IRS's regulations on public charities, Defendants lack standing to pursue this wild goose chase.

B. <u>The discovery demands seek to chill TST's right of free association.</u>

A plain review of the discovery requests reveals no relevance to sincerity at all, but instead an effort to chill TST's right of association. *See, e.g., Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) (*hereinafter* "AFP") (associations have a First Amendment privilege to refuse to disclose their donors, and any government effort to procure such information must survive "exacting scrutiny"); *NAACP v. Ala., ex rel. Patterson*, 357 U.S. 449 (1958) (same, for membership lists) (*hereinafter* "NAACP"). Among Defendants' discovery demands are documents identifying TST's ministry, TST's membership in Iowa, and causes to which TST contributes:

- RFP 2 ("Produce documents that show the religious services You held from January 1, 2023 to the present, including … records of attendance"),
- RFP 3 ("Produce documents sufficient to identify Your ordained ministers"),
- RFP 4 ("Produce documents sufficient to show … any membership application … and documents that show the number of TST members in Iowa"),
- RFP 7 ("Produce documents sufficient to show Plaintiff Mortimer Adramelech's membership in TST and his participation in TST's religious services, practices, or observances") and
- RFP 9 ("Produce documents sufficient to identify the charitable organizations to which You contributed funds from January 1, 2023, to the present and the amounts contributed.")

(*See* Dkt. 18-4). These discovery requests are untenable at any stage of the litigation, much less on an expedited basis, because "compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of

governmental action." *AFP*, 594 U.S. at 606 (quoting *NAACP*, 357 U.S. at 462). The First Amendment therefore generally prohibits such compelled disclosure of membership lists and donors, including through use of the discovery process. *Id.; see also First Choice*, 146 S. Ct. at 1125-26 ("[e]ven if a subpoena targeting First Amendment activity is never enforced in court, [it] will give its targets a very good reason to clam up [and] give the target organization's members and supporters a very good reason to abandon the cause.").

The concerns about invasive and harassing discovery being used to chill TST's right of association are heightened because TST has already put forth evidence that its membership regularly faces threats of harassment and violence in retaliation against TST's religious viewpoint. (*See* Dkt. 10-2 ¶¶ 5-10; Dkt. 10-3 ¶¶ 5-6). Defendants do not contest this factual proposition. (Dkt. 17 ¶ 14). Therefore, to support its demands for disclosure of the above information, Defendants needed to show narrow tailoring to the sincerity of TST's and Adramelech's religiosity. *AFP*, 594 U.S. at 611 ("exacting scrutiny requires that … the disclosure requirement be narrowly tailored to the interest it promotes"). Instead, Defendants baselessly assert that TST might not be in strict compliance with IRS regulations. (Dkt. 18 ¶ 30). Religious sincerity and public charity status are two distinct inquiries. *Spiritual Outreach Soc. v. C.I.R.*, 927 F.2d 335, 339 (8th Cir. 1991) ("There is no doubt that SOS is engaged in sincere religious activity … However, the IRS has certain requirements which a religious organization, *no matter how sincere*, must meet before it can receive certain preferential tax treatment") (emphasis added). Defendants' requests are only tailored to seek evidence that TST shouldn't be deemed a public charity, a meritless quest as well as an irrelevant one, not that TST and Adramelech don't sincerely hold TST's religious beliefs.

C. The remaining discovery requests have no relevance to sincerity.

The remaining discovery requests also have no relevance to sincerity:

- RFP 1 ("Produce Your application to the Internal Revenue Service for recognition as a church under Internal Revenue Code § 170(b)(1)(A)(i)[.]"),
- RFP 5 ("Produce documents constituting or describing Your creed, tenets, doctrine, code of discipline, and religious literature, including any materials used for religious instruction of members or of the young"), and
- RFP 8 ("Produce documents sufficient to show Your total revenues and expenditures for fiscal years 2023, 2024, and 2025, broken out by function[.]"),

(*See* Dkt. 18-4).

As to RFP 1, TST's application for "church" tax status is only relevant to an inquiry into whether the IRS errantly ruled that TST is entitled to the benefits of having a "church" tax status. That says nothing of whether TST or Adramelech sincerely hold their views as averred. *Spiritual Outreach*, 927 F.2d at 339.

As to RFP 5, documents describing TST's doctrine do not show sincerity of the doctrine; it is an inquiry intended to undermine the religiosity of the doctrine itself. That issue has already been fully litigated twice, both times resulting in a finding that TST's ideology is "religious". *Scottsdale*, 2020 WL 587882, at * 7; *Cave,* 829 F.Supp. 3d at 672.

As to RFP 8, even the IRS isn't entitled to TST's annual financial statements. 26 U.S.C. § 6033(a)(3)(A)(i). On an identical dispute (whether TST is a bona fide religion), the Eastern District of Arkansas prohibited the Arkansas Secretary of State from seeking financial information from TST because the requests were not proportional to the needs of the case, specifically rejecting the argument that "[T]he Satanic Temple has put its tax status and financial information at issue by claiming to be a tax-exempt church." Discovery Order at 22, *Cave v. Jester*, No. 4:18-cv-00342, Dkt. No. 116 (E.D. Ark. Mar. 1, 2020). Defendants' proffered requests are not even proportional

to the needs of the case in the ordinary course of proceedings. They are doubly improper on an expedited basis.

To the extent Defendants desire to cross-examine TST's witnesses about perceived inconsistencies within TST's belief structure at the hearing set for October 6, they need no written discovery to support that inquisition. But Defendants are cautioned that religiosity "is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, *consistent*, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981) (emphasis added); *see also Flanagan v. State*, 109 Nev. 50, 54 (1993) ("[a]lthough these beliefs are offensive to many, they are clearly religious within the broad scope of the First Amendment."). The Defendants may intend the hearing set for October 6, 2026 to be an opportunity for political theater. But these arguments are not relevant to the appropriate legal inquiry before the Court.

**IV. The Free Speech Claim Applies Regardless Of Religious Sincerity.**

Even if the Court were inclined to doubt whether TST and Adramelech sincerely hold their religious beliefs as averred, they are entitled to the preliminary injunctive relief they seek solely through their Free Speech claims, to which sincerity of religious belief is immaterial. *See generally Saucon Valley Sch. Dist.*, 671 F. Supp. 3d 555 (granting a preliminary injunction, on Free Speech grounds only, requiring a school district to allow TST's after-school program).

The ostensible basis for Defendants' denials of the 2024 and 2025 event applications was not the sincerity of Plaintiffs' religiosity, but an asserted belief—evidence and denials notwithstanding—that Plaintiffs would beat children at the Capitol Complex as part of the planned Krampus Costume Contest. (Dkt. 11-2 ¶¶ 27-31). Defendants' first filings in this matter all but announce the denials of the 2024 and 2025 applications as a transparent pretext, which was readily

apparent to anyone with a passing familiarity of the circumstances. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993) ("The Free Exercise Clause protects against governmental hostility which is masked, as well as overt."). Defendants' motion concedes that Defendants treat Plaintiffs differently because of their viewpoint. (*See* Dkt. 18 ¶ 5) ("Of course, the State would not *normally* question the stated sincerely held religious beliefs of a person or religious organization. This case presents unique facts, though[.]") (emphasis added). The only "unique" aspect about this case is the character of the religious beliefs advanced by the plaintiffs and Defendants' fervent disfavor of them. (*See, e.g.,* Dkt. 11-2 ¶ 34).

Because Defendants' motion is only further evidence that the complained-of denials were the product of viewpoint discrimination, the Court could side-step the constitutionally sensitive and meritless sincerity objections Defendants raise and find that the Free Speech claim alone is sufficient grounds to grant Plaintiffs preliminary injunctive relief. As sincerity is not relevant to the Free Speech count, that would render Defendants' motion moot. *See St. Pierre v. United States*, 319 U.S. 41, 42 (1943) ("A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it.")

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this Court to deny Defendants' motion for expedited discovery in full.

Respectfully submitted on September 3, 2026.

/s/Matt Kezhaya
Matt Kezhaya, MN # 0402193
Admitted *pro hac vice*

Kezhaya Law PLC
150 S. Fifth St., Suite 1850
Minneapolis, MN 55402

Telephone: (612) 276-2216
Email: matt@kezhaya.law

/s/ Shefali Aurora
Shefali Aurora, AT00012874
/s/ Rita Bettis Austen
Rita Bettis Austen, AT0011558
/s/ Thomas Story
Thomas Story, AT0013130

ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Ste. 808
Des Moines, IA 50309–2317
Telephone: (515) 243-3988
Fax: (515) 243-8506
Email: Shefali.Aurora@aclu-ia.org
Email: Rita.Bettis@aclu-ia.org
Email: Thomas.Story@aclu-ia.org

/s/ Emily E. Wilson
Emily E. Wilson, AT0013860
/s/ Melissa C. Hasso
Melissa C. Hasso, AT0009833

HASSO & WILSON LAW FIRM
111 E. Grand Ave., Suite 212
Des Moines, IA 50309
Telephone: (515) 224-2079
Fax: (515) 224-2321
Email: ewilson@hwlawiowa.com
Email: mhasso@hwlawiowa.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing papers with the Clerk of Court by using the CM/ECF system.

Date: September 3, 2026

/s/ Shefali Aurora
Shefali Aurora, AT00012874

ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Ste. 808
Des Moines, IA 50309–2317
Telephone: (515)243-3988
Fax: (515) 243-8506
Email: Shefali.Aurora@aclu-ia.org