IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| THE SATANIC TEMPLE, INC., and MORTIMER ADRAMELECH,<br><br>Plaintiffs,<br><br>v.<br><br>MARK CAMPBELL, DIRECTOR OF THE IOWA DEPARTMENT OF ADMINISTRATIVE SERVICES, in his official and individual capacities, ADAM STEEN, FORMER DIRECTOR OF THE IOWA DEPARTMENT OF ADMINISTRATIVE SERVICES, in his individual capacity, and THE IOWA DEPARTMENT OF ADMINISTRATIVE SERVICES,<br><br>Defendants. | Case No. 4:26-cv-336<br><br>**REPLY TO RESISTANCE OF DEFENDANTS' MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY REGARDING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

## I. Good Cause Exists to Conduct Limited Discovery in this Matter.

Defendants bear the burden to establish whether the Satanists are entitled to the relief it is seeking. A preliminary injunction "is an extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Plaintiffs asked for a preliminary injunction which requires the Court to evaluate the underlying merits of their case. Dkt. 3. Rule 26(d)(1) permits discovery before the parties' conference when the Court so orders. Fed. R. Civ. P. 26(d)(1). Good cause exists where a party seeks a preliminary injunction and the opposing party cannot meaningfully respond without limited discovery.

To determine the Satanists' likelihood of success on the merits, the Court must weigh whether the Satanists are entitled to the relief they seek. That requires knowing whether the Satanists sincerely hold the beliefs they profess. *Carpenter v. Wilkinson*, 946 F.Supp. 522, 525 (N.D. Ohio 1996). Defendants do not ask this Court to weigh whether Plaintiffs' beliefs are true. "[T]hese are inquiries foreclosed to Government." *United States v. Seeger*, 380 U.S. 163, 184 (1965). The question is only whether the professed beliefs are sincerely held—and that question the Court may reach. *See Yellowbear v. Lampert*, 741 F.3d 48, 54 (10th Cir. 2014) (Gorsuch, J.) (holding the sincerity inquiry asks whether a claimant actually holds the beliefs he professes).

Indeed, the Supreme Court has said as much in the RFRA context, contemplating that a "pretextual assertion of a religious belief in order to obtain an exemption for financial reasons would fail." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 717 n.28 (2014).

As the exhibits show, the Satanists have called their own sincerity into question, and thus it may be evaluated by using extrinsic evidence. *Van Schaick v. Church of Scientology of CA, Inc.*, 535 F. Supp. 1125, 1144 (D. Mass. 1982) (testing sincerity of religious belief "involves a somewhat truncated inquiry which must focus on extrinsic evidence"). Here, the Satanists' own self-identification merit further review by Defendants and this Court to address Plaintiffs' likelihood of success on the merits. *See id.*

### A. The Satanists are more focused on commercial than religious goals.

Much of the Satanists' presence is commercial or political, rather than religious. The Satanists use two names interchangeably: one for-profit and one non-profit; aggressively use intellectual property and confidentiality protections; and sell merchandise. Further discovery is merited in this matter to determine whether the Satanists are a commercial enterprise, a political group, or a religion.

*Interchangeable Use of the Satanists' Name and For-Profit UFC*

The United Federation of Churches, LLC ("UFC"), is a Massachusetts limited-liability company which allegedly does business as "The Satanic Temple." *UFC v. Johnson*, 2023 WL 8271978 (9th Cir. 2023). The Satanic Temple is the 501(c)(3) tax-exempt entity. Exh. A. So a for-profit entity and a not-for-profit.

When a prospective Satanist attends SatanCon and buys "The Seven Tenets of the Satanic Temple," do those funds support the ministry of The Satanic Temple or the for-profit entity UFC? Answering that question matters for determining whether either organization is religious.

The commercial nature of both groups evolved over time. When the UFC was formed in 2014, its ostensible purpose was "educational activities and all other lawful purposes." Exh. B. In 2018, that changed to include selling merchandise. Exhs. C, D. In its most recent Annual Report, the UFC's purpose was "the sale of religious merchandise." Exh. E.

*Aggressive Intellectual Property and Confidentiality Protections*

The UFC has at least five registered trademarks and two copyright registrations to its name. A trademark must be "used in commerce" to be protected. 15 U.S.C. § 1127 (defining "use in commerce" as "the bona fide use of a mark in the ordinary course of trade"). Congress determined that because trademarks promote competition and maintenance of product quality, public policy dictates that trademarks receive the greatest level of protection that can be given to them.

And members of the Satanists' National Council sign non-disclosure agreements. Joseph P. Laycock, *Speak of the Devil: How the Satanic Temple is Changing the Way We Talk About Religion xi* (2020). Such agreements have long been the hallmark of corporations to protect their non-public business information and trade secrets. Jodi L. Short, *Killing the Messenger: The Use of Nondisclosure Agreements to Silence Whistleblowers,* 60 U. Pitt. L. Rev. 1207 (1999).

*Commercial Opportunities*

Many commercial opportunities are associated with both the for-profit UFC and non-profit Satanists. For example, The Satanic Temple has a small physical presence that shares space with the Salem Art Gallery, which charges admission. Exhs. F, G. Both The Satanic Temple headquarters and the Salem Art Gallery rent their spaces for events like weddings. Exh. H.

It is unclear which organization benefits from the proceeds of these events, wedding packages, or "add-ons"—the for-profit or the non-profit. Exhs. I, J, K, L, M. The Satanists also sell dedication and divorce ceremonies. Exhs. N, O, P.

Satanist founder Lucien Greaves's conduct raises questions about the group's commercial nature. In 2019, Greaves established a band that sells his album on The Satanic Temple's website. Exh. Q.

**B. The Relationship between the Satanists and the Iowa Satanists is not known.**

There has been no nexus established between them and Adramelech. Notably, TST-Iowa is a fictitious name for a 501(c)(3) corporation, Hawkeye Ministries, which, in turn, has no readily discernible nexus to the Satanists. Exhs. R, S.

Defendants have no evidence of the Satanists applying for or being denied an application to participate in holiday events at the Iowa Capitol and any applications approved or denied only reference TST-Iowa or Adramelech. But it is not clear the Satanists have ever had any connection to TST-Iowa. As a result, further discovery on the structure and relationship of both organizations is necessary.

**CONCLUSION**

Defendants must inquire into the Satanists to defend themselves in the sought preliminary injunction. Thus, limited preliminary injunction discovery is warranted. Alternatively, if the Satanists only seek preliminary injunctive relief on the Free Speech claim, there is no need for preliminary discovery. To the extent Plaintiffs are concerned with delay, Defendants have no objection to expediting the response time.

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

*/s/ Lindsey L. Browning*
LINDSEY L. BROWNING AT0011959
Assistant Attorney General

Agency Counsel Division
1305 E. Walnut St., Second Fl.
Des Moines, IA 50319
Ph: (515) 281-3441
Fax: (515) 281-4209
Email: lindsey.browning@ag.iowa.gov
ATTORNEYS FOR DEFENDANTS

Counsel of record served via CM-ECF
on September 9, 2026.