IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| The Satanic Temple, Inc., and Mortimer Adramelech,<br><br>Plaintiffs,<br><br>vs.<br><br>Mark Campbell, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:26-cv-336<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiffs respectfully submit this Reply in support of their Motion for Preliminary Injunction.

**INTRODUCTION**

Defendants' arguments against the preliminary injunction are meritless. Their claim that the denial was based on a concern about the Krampus costume contest is spurious; Plaintiffs indicated that they would be willing to proceed without the costume contest, but Defendants nevertheless denied the events.[1] The denials are impermissible viewpoint- and content-based restrictions on Plaintiffs' speech. Defendants' mischaracterization of the Capitol as a limited public forum is belied by the case law and facts. Defendants' free exercise argument fails because they have offered no evidence to rebut the record evidence that the Satanic Temple ("TST") is a bona fide religion and that Adramalech's beliefs are sincerely held. Their defense to Plaintiffs' ICRA claim fails because the Capitol event space is a public accommodation and this Court has supplemental jurisdiction over the claim. Their arguments under Iowa RFRA fail

[1] Defendants have now formally denied Plaintiffs' application to host their holiday event at the Capitol this December. (ECF 25-1). Plaintiffs filed an additional complaint with the Iowa Office of Civil Rights based on this denial on September 25, 2026.

because singling out Plaintiffs and banning them from practicing their religion on the same terms as others is a substantial burden on their religion. Finally, an appeal bond is not appropriate here.

## ARGUMENT

Plaintiffs have shown they are likely to succeed on the merits, though they need only show a "fair chance of prevailing." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732–33 (8th Cir. 2008) (en banc). Defendants' argument for a heightened standard to show likelihood of success on the merits (ECF 29 at 12-13) fails because here a preliminary injunction would not enjoin "government action based on presumptively reasoned democratic processes." *Rounds*, 530 F.3d at 732-33. The policy change and subsequent denials were not products of "the full play of the democratic process" akin to adoption of administrative rules or legislation; they were ad hoc actions Defendants took specifically to exclude Plaintiffs. *Id.* at 732 n.6 (quoting *Able v. United States*, 44 F.3d 128, 131–32 (2d Cir. 1995)); (ECF 3-3 at 112; ECF 3-4 at 112) ("But I'm also the guy that changed the policy to make sure that we weren't going to lose a 'free speech' argument . . . .").

### I. Plaintiffs Are Likely to Succeed on the Free Speech Claims.

#### A. Defendants Did Not Deny Plaintiffs' Application Based on the Krampus Costume Contest.

Defendants' response relies heavily on their assertion that they denied Plaintiffs' applications solely because of the Krampus costume contest. (ECF 29 at 16–20). But the record shows this justification was pretextual; even though Plaintiffs offered to omit the costume contest in 2024 and have made that clear throughout this years-long dispute before the Iowa Office of Civil Rights and in this litigation (ECF 3-3 at 98, 231; ECF 3-4 at 98, 220; ECF 9-0, ¶¶ 69-72; ECF 11-2, ¶ 28), Defendants still denied the applications. Defendants largely omit these important facts from their recitation of events, and now, for the first time, claim the denial was

based on Plaintiffs missing the deadline to submit applications 30 days before an event. (ECF 3-3 at 93, 97; ECF 3-4 at 93, 97; ECF 29 at 11). The record shows that all three event applications were submitted well before the deadlines. (ECF 9-0, ¶ 51) (October 7, 2024 submission for December 14, 2024 event); (*Id.* at ¶ 81) (September 29, 2025 submission for December 13, 2025 event); (*Id.* at ¶ 94) (March 7, 2026 submission for December 12, 2026 event). Defendants' unresponsiveness was the sole reason for the delays that prevented Plaintiffs from submitting a new application in compliance with the deadlines. Plaintiffs submitted the 2024 application more than two months before the event date; they responded timely to all of Defendants' inquiries, and diligently followed up for answers when Defendants did not respond; but Defendants repeatedly failed to respond in a timely fashion, waiting until ten days before the event to request additional information and until four days before the event to deny the application. (ECF 3-3 at 31–35, 93, 96–98; ECF 3-4 at 31–35, 93, 96–98; ECF 11-1 at 12–13).

Campbell's declaration avers he is unaware of costume competitions at the Capitol and that no costumed individual accompanying the display or event has received approval. (ECF 29-1 at 2). However, Plaintiffs are aware of at least one annual event at the Capitol Complex for children that encourages costumes. Goldie's Halloween Bash, https://history.iowa.gov/events/goldies-halloween-bash-0#:~:text=SHSI-,Event%20Details,And%20much%20more!,-While%20everyone%20is (last visited Sept. 27, 2026).

Plaintiffs strongly disagree with Defendants' characterization of their event as "violence-themed" (ECF 29 at 7), and any claim that Defendants have a policy of denying displays or events based on an attenuated association with potential violence is absurd. Within the Capitol is: a photograph depicting infantry soldiers returning from battle; a Union Army emblem featuring an eagle holding a sword; a 1,350-pound model of the USS Iowa, a battleship

equipped with cruise missile launchers; a Venetian mosaic of the figure Defense, holding a sword; and the mural Westward, featuring men and women carrying guns, scythes, and (most violent of all) sticks. Capitol Tours and Resources, Capitol Today, https://www.legis.iowa.gov/resources/tourCapitol/pictorial/today (last visited Sept. 27, 2026). Just outside the Capitol sits: a Spanish Howitzer, a trophy gun relic from the Spanish-American War; the Allison Monument featuring an individual holding a sword; the Matthew Vassar mortar, a relic from the Civil War; the Parrott rifle; and a cannon. Capitol Tours and Resources, Capitol Grounds, https://www.legis.iowa.gov/resources/tourCapitol/pictorial/capitolGrounds (last visited Sept. 27, 2026).

Defendants' response does nothing to rebut Plaintiffs' ample evidence that the denial was based on disagreement with and disfavor of Plaintiffs' religious viewpoint. (ECF 3-3 at 107, 112, 120-22, 129, 141-42; ECF 3-4 at 107, 112, 120-22, 129, 141-42). Noticeably absent from Campbell's declaration is any statement denying that Defendants based their denials on this religious viewpoint. (ECF 29-1). Beyond the fact that Plaintiffs have repeatedly made clear their willingness to omit the Krampus costume contest, Defendants ignored the record evidence that Plaintiffs assured them there would be no harm to minors at the events; that they have previously hosted Krampus costume events for years without any incident of harm to minors (ECF 3-3 at 96–98; ECF 3-4 at 96–98; ECF 3-18), and indeed, just how benign and unremarkable these seasonal Krampus events are.[2] They cannot overcome this evidence that the denials were pretextual justifications based on nothing more than assumptions and conclusory opinions.

---

[2] For example, the Des Moines Christkindlmarket hosts an annual Krampus run event and has done so for years without issue. Krampuslauf Running of the Krampi, https://christkindlmarketdsm.com/events/krampuslauf-running-of-the-krampi-at-cdm2025/ (last visited Sept. 27, 2026).

B. The Capitol Rotunda is a designated public forum where content-based restrictions are subject to strict scrutiny.

Even if the applications were denied based on the Krampus costumes alone, it would still constitute impermissible content-based discrimination in a designated public forum. Defendants try to characterize the Rotunda as a limited public forum to overcome this, but that directly contradicts this Court's previous findings that the Capitol Complex grounds, *including* the Rotunda, are designated public fora. *Johnson v. Bayens*, No. 4:20-cv-00306, 2020 WL 12618873, at *6 (S.D. Iowa Dec. 10, 2020); *Lubavitch of Iowa, Inc. v. Walters*, 684 F. Supp. 610, 613 (S.D. Iowa 1988).

Defendants point to restrictions on access (security checkpoint, ban on weapons, public visiting hours) to claim the Rotunda is a limited forum. (ECF 29 at 14–15). But these are permissible time, place, and manner restrictions, and do not diminish the Rotunda's status as a designated public forum. *See Thorburn v. Austin*, 231 F.3d 1114, 1120 (8th Cir. 2000) (recognizing content-neutral restrictions regarding time, place, or manner of speaking in public fora). Moreover, unlike the political debate in *Forbes* which Defendants cite, (ECF 29 at 7), access to the Rotunda is not limited "to certain kinds of speakers or to the discussion of certain subjects," *Turning Point USA at Ark. State Univ. v. Rhodes*, 973 F.3d 868, 876 (8th Cir. 2020) (quoting *Bowman v. White*, 444 F.3d 967, 976 (8th Cir. 2006)), but is expressly open to "the general public." Iowa Admin. Code r. 11-100.4(4); *see Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 679–80 (1998) (distinguishing between "general access" for a class of speakers and "selective access" for individual speakers).

Physical markers, special characteristics, objective uses, government intention, and policy all demonstrate that the Rotunda is a designated public forum. *See Sessler v. City of Davenport*, 102 F.4th 876, 882 (8th Cir. 2024) (discussing considerations in assessing nature of

various fora). There is a long history of expressive activity at the Rotunda. (ECF 11-2, ¶ 8). It is separate from offices and the legislative chambers and is open to the general public during normal business hours. The State's intention and policy governing the space are clear from the application: to allow anyone to use it for public events on a first-come, first-served basis, regardless of speaker or subject matter. Iowa Admin. Code r. 11-100.4(4). Defendants have made "a forum generally open" and cannot now exclude Plaintiffs from the forum based on the content or viewpoint of their speech. *Widmar v. Vincent*, 454 U.S. 263, 267 (1981); *Healy v. James*, 408 U.S. 169, 181 (1972); *Shurtleff v. City of Boston*, 596 U.S. 243, 258 (2022); *Good News Club v. Milford Central School*, 533 U.S. 98, 112 (2001).

C. <u>The Denials Constitute Impermissible Viewpoint Discrimination.</u>

Even if the Court finds that the Rotunda is a limited public forum, the exclusion still violates the First Amendment—both because it is actually explicit viewpoint discrimination as admitted by Steen and never subsequently disavowed by Campbell—and because even an ostensibly facially neutral policy that permits the DAS Director unfettered discretion to deny speech poses such a significant risk of viewpoint discrimination that it, too, is impermissible. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975) ("[T]he danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use."); *St. Michael's Media, Inc. v. Mayor & City Council of Balt.*, 566 F. Supp. 3d 327, 369 (D. Md. 2021).

Defendants claim the denials were because of "displays, sounds, and other conduct harmful to minors" (ECF 29 at 11), but this restriction is pretextual if only raised in response to specific types of speech. *See Neighborhood Enters., Inc. v. City of St. Louis*, 644 F.3d 728, 737 (8th Cir. 2011) (concluding that the Court was "not 'required to accept legislative explanations

from a governmental entity regarding the purpose(s) for a restriction on speech without further inquiry'" (quoting *Whitton v. City of Gladstone*, 54 F.3d 1400, 1406 (8th Cir. 1995))). The record here shows precisely that sort of disparate treatment of Plaintiffs. (ECF 11-1 at 10-16; ECF 3-3 at 107, 112, 120-22, 129, 141-42; ECF 3-4 at 107, 112, 120-22, 129, 141-42; ECF 3-19, *passim*).

**II. Plaintiffs Are Likely to Succeed on the Free Exercise Claims.**

Defendants, without support, assert that Plaintiffs have not established their views are religious or sincerely held. (ECF 29 at 21). Record evidence and case law have established TST's status as a bona fide religion and Adramelech's sincerely held religious beliefs. *Satanic Temple v. City of Scottsdale*, No. CV18-00621, 2020 WL 587882, at *7 (D. Ariz. Feb. 6, 2020); *Cave v. Jester*, 829 F. Supp. 3d 582, 669–71 (E.D. Ark. 2026); *Satanic Temple, Inc. v. Saucon Valley Sch. Dist.*, 671 F. Supp. 3d 555, 559 (E.D. Pa. 2023); (ECF 11-2 at ¶ 4). Adramelech has testified to his sincerely held beliefs in the religious moral framework espoused by TST; he has further demonstrated this sincerity in undertaking a leadership role in the local congregation, providing members with religious services and organizing ceremonies and holidays in which TST participates, as well as his own artistic expression as the creator of the 2023 display, and described his training as a Minister of Satan. *Id*. Defendants present no evidence to refute this; instead, they rely on speculation and internet hearsay. (ECF 29 at 21). The Court has emphasized that the 'truth' of a belief is not open to question. *United States v. Seeger*, 380 U.S. 163, 185 (1965). The denials were not neutral or generally applicable; they treated religion unequally and do not survive strict scrutiny. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 462 (2017) ("The Department's policy expressly discriminates against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character.").

### III. Plaintiffs Are Likely to Succeed on the State Law Claims.

This Court has supplemental jurisdiction over Plaintiffs' state law claims because they arise from the same facts as the federal claims under 42 U.S.C. § 1983 and form part of the same case or controversy. 28 U.S.C. § 1367(a); *Brown v. Mortg. Elec. Registration Sys., Inc.*, 738 F.3d 926, 933 (8th Cir. 2013).

#### A. Plaintiffs Are Likely to Succeed on the ICRA Claims.

Contrary to Defendants' claims (ECF 29 at 24), the mere fact that participants must meet certain criteria does not disqualify the Capitol event space as a public accommodation. IDAS is an agency that furnishes public services through its implementation and oversight of the event applications at the Capitol Complex and is a "government unit" within the ICRA's definition of a "public accommodation." *See Good v. Iowa Dep't of Hum. Servs.*, 924 N.W.2d 853, 861 (Iowa 2019) (holding Iowa Medicaid program, provided upon application only to Iowans meeting the criteria for benefits, is a public accommodation).

#### B. Plaintiffs Are Likely to Succeed on the Iowa RFRA Claims.

Defendants wrongly claim that because Plaintiffs can host their event elsewhere, their religion is not substantially burdened. (ECF 29 at 25). There is no case law interpreting "substantial burden" under the Iowa RFRA, but under the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA"), from which Iowa RFRA takes much of its language, governmental action substantially burdens the exercise of religion when it penalizes them for those beliefs. *United States v. Means*, 858 F.2d 404, 407 (8th Cir. 1988).[3] By singling Plaintiffs out for exclusion from the Rotunda because of their beliefs, Defendants substantially burdened

[3] Federal courts interpreting many state RFRAs look to RLUIPA caselaw in construing the new statutes. *Holt v. Hobb*s, 574 U.S. 352 (2015); *Apache Stronghold v. United States*, 101 F.4th 1036 (9th Cir. 2024); *Barr v. City of Sinton*, 295 S.W.3d 287, 301 (Tex. 2009).

those beliefs and are subject to strict scrutiny. *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 546 (1993); *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 511 (2020) (quoting *Lyng v. Northwest Indian Cemetery Protective Assn.*, 485 U.S. 439, 449 (1988)) (the government "penalize[s] religious activity" whenever it denies to religious persons an "equal share of the rights, benefits, and privileges enjoyed by other citizens."); *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 901 (7th Cir. 2005) (holding that requiring church to relocate was substantial).

### IV. Rule 65(c) Does Not Require A Bond in this Case.

Finally, the Court should exercise its discretion under Rule 65(c) to waive bond for two reasons. First, this Court routinely waives bond for litigation against the State that, like Plaintiffs', would vindicate important constitutional and statutory rights. *See, e.g.*, *Arc of Iowa v. Reynolds*, 566 F. Supp. 3d 921, 940 (S.D. Iowa 2021) (waiving bond because of the important public interest in enforcement of the ADA, and the Rehabilitation Act and because Defendants did not provide any evidence of damages or costs they may incur); *Bus. Leaders in Christ v. Univ. of Iowa*, 3:17-cv-00080-SMR-SBJ, 2018 WL 3688981, at *1–2 (S.D. Iowa Jan. 23, 2018) (enjoining the university's selective enforcement of an otherwise reasonable and viewpoint neutral policy, and requiring no bond); *Johnson v. Bayens*, 4:20-cv-00306-RGE-CFB, 2020 WL 12618873, at *11 (S.D. Iowa Dec. 10, 2020) (granting preliminary injunction of ban on protesters from State Capitol, requiring no bond); *Animal Legal Def. Fund v. Reynolds*, 4:19-cv-00124-JEG-HCA, 2019 WL 8301668, at *20 (S.D. Iowa Dec. 2, 2019) (preliminarily enjoining Iowa's second "ag-gag" law, and requiring no bond). It should do so again here.

Second, Defendants have not met their burden of establishing a rational basis for the proposed bond amount. *Arc of Iowa*, 566 F. Supp. 3d at 940. When the asserted cost is

"unsupported and speculative," courts have declined to impose a bond. *CASA, Inc. v. Trump*, 793 F. Supp. 3d 687, 701–02 (D. Md. 2025); *Heather K. by Anita K. v. City of Mallard*, 887 F. Supp. 1249, 1268 (N.D. Iowa 1995); *Dr. John's, Inc. v. City of Sioux City*, 305 F. Supp. 2d 1022, 1043–44 (N.D. Iowa 2004). They offer no evidence that they will incur any damages or anything beyond nominal costs from defending this litigation, let alone the $10,000 damage deposit.[4] Accordingly, if the Court determines that a bond is required, it should be nominal.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted this 28th day of September, 2026.

/s/ Shefali Aurora
Shefali Aurora, AT00012874
/s/ Rita Bettis Austen
Rita Bettis Austen, AT0011558
/s/ Thomas Story
Thomas Story, AT0013130

ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Ste. 808
Des Moines, IA 50309–2317
Telephone: (515) 243-3988
Fax: (515) 243-8506
Email: Shefali.Aurora@aclu-ia.org
Email: Rita.Bettis@aclu-ia.org
Email: Thomas.Story@aclu-ia.org

/s/ Emily E. Wilson
Emily E. Wilson, AT0013860
/s/ Melissa C. Hasso
Melissa C. Hasso, AT0009833

[4] The supposed safety concerns are not supported by any evidence. To the contrary, as Defendants concede, visitors to the Capitol must already go through security. (ECF 29 at 14). Finally, they can require Plaintiffs to obtain liability insurance or a damage deposit per Iowa Admin. Code r. 11-100.4(6).

Hasso & Wilson Law Firm
111 E. Grand Ave., Suite 212
Des Moines, IA 50309
Telephone: (515) 224-2079
Fax: (515) 224-2321
Email: ewilson@hwlawiowa.com
Email: mhasso@hwlawiowa.com

/s/Matt Kezhaya
Matt Kezhaya, MN # 0402193
Admitted *pro hac vice*

Kezhaya Law PLC
150 S. Fifth St., Suite 1850
Minneapolis, MN 55402
Telephone: (612) 276-2216
Fax: matt@kezhaya.law

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of Court by using the CM/ECF system.

Date: September 28, 2026

/s/ Shefali Aurora
Shefali Aurora, AT00012874

ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Ste. 808
Des Moines, IA 50309–2317
Telephone: (515)243-3988
Fax: (515) 243-8506
Email: Shefali.Aurora@aclu-ia.org