**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| THE SATANIC TEMPLE, INC. and MORTIMER ADRAMELECH,<br>*Plaintiffs*,<br>v.<br>MARK CAMPBELL, DIRECTOR OF THE IOWA DEPARTMENT OF ADMINISTRATIVE SERVICES, in his official and individual capacities, ADAM STEEN, FORMER DIRECTOR OF THE IOWA DEPARTMENT OF ADMINISTRATIVE SERVICES, in his individual capacity, and THE IOWA DEPARTMENT OF ADMINISTRATIVE SERVICES,<br>*Defendants.* | Case No. 4:26-cv-336-SMR-HCA<br><br>**BRIEF IN SUPPORT OF DEFENDANT MARK CAMPBELL'S EMERGENCY MOTION FOR A STAY OF PRELIMINARY INJUNCTION PENDING APPEAL**<br><br>**EXPEDITED RELIEF REQUESTED** |

**BRIEF IN SUPPORT OF DEFENDANT MARK CAMPBELL'S EMERGENCY MOTION FOR A STAY OF PRELIMINARY INJUNCTION PENDING APPEAL**

On November 2, 2026, this Court granted Plaintiffs' request for a preliminary injunction, requiring Defendant Mark Campbell, the director of Iowa's Department of Administrative Services ("DAS"), to permit Plaintiffs to hold a Krampus costume event in the Capitol Rotunda on December 12, 2026. Dkt. 52 at 20, 23–24. This Court ordered Director Campbell to sign a memorandum of understanding approving the event by Monday, November 9, and to report to the Court any conditions placed on the event by Thursday, November 12. Dkt. 52 at 23–24.

Defendant Campbell moves for a stay pending appeal. The stay factors favor granting a stay here. Defendant Campbell is likely to succeed on the merits and will be irreparably injured by the order requiring him to permit the event. More, the seven-day deadline for countersigning the

memorandum of understanding does not permit enough time for Director Campbell to pursue an appeal to the U.S. Court of Appeals for the Eighth Circuit and is not necessary since the date for the requested event is approximately six weeks away. This Court should grant a stay pending appeal of its entire order, but at minimum should stay its seven-day and ten-day deadlines to permit Defendant Campbell to seek relief on appeal.

## STANDARD

Courts consider four factors when determining whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quotation omitted); *see also Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 607 (8th Cir. 2020). The first two factors—likelihood of success on the merits and irreparable injury—"are the most critical." *Nken*, 556 U.S. at 434.

The order is also a mandatory injunction. It does not preserve the status quo; it directs Director Campbell to approve an application he denied, to countersign a memorandum of understanding within seven days, and to file a report within ten. Relief that commands affirmative action and alters the status quo calls for a correspondingly careful look, and that caution bears directly on the stay factors. *See Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993) (affirming denial of preliminary affirmative injunction when voluntarily taken remedial alternative was available).

## ARGUMENT

### I. Director Campbell is likely to succeed on the merits.

The Court assumed that the Rotunda is a limited public forum, Dkt. 52 at 8, so the question on appeal is narrow: whether a restriction on the use of a government building for an event is (1)

reasonable considering the forum's purpose and (2) viewpoint neutral. *Powell v. Noble*, 798 F.3d 690, 700 (8th Cir. 2015). Director Campbell is likely to succeed because DAS's judgment satisfies both requirements, and because the order's contrary holding would subject every discretionary judgment about who may hold an event in the Capitol to judicial second-guessing of the official's reasons.

*Reasonableness*. DAS's denial of the Krampus costume event was reasonable. Reasonableness is assessed "in light of the purpose which the forum at issue serves." *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 335 (8th Cir. 2011) (quotation omitted). Here, the Capitol is a venue for visitors of all ages, including children, to learn about Iowa's history and government. So DAS reasonably concluded that permitting an event where participants would don full-body, masked costumes of a figure storied for violence toward children—sticks in hand—would be detrimental to that purpose. More, "protecting the safety and convenience of persons using a public forum is a valid governmental objective." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 650 (1981) (quotation omitted). So is "limit[ing] . . . disruption" and "facilitat[ing] safe and efficient access" to public property. *Powell*, 798 F.3d at 701.

The Court's order reasoned that a concern about whether certain types of speech "might frighten children" "is not a permissible basis for excluding speech." Dkt. 52 at 8. But the State has a strong interest in protecting children from both physical *and* psychological harm. *Ginsberg v. New York*, 390 U.S. 629, 639–40 (1968); *Osborne v. Ohio*, 495 U.S. 103, 109 (1990).

That is why the Eighth Circuit has recognized that a "city's interest in protecting very young children from frightening images is constitutionally important," and that the interest is "significant," "compelling," and "legitimate." *Olmer v. City of Lincoln*, 192 F.3d 1176, 1180 (8th

Cir. 1999) (quotation omitted), *overruled in part on other grounds by Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) (en banc). The Court held that the interest did not sustain the ordinance there, which barred all picketing on public sidewalks near churches regardless of what the signs depicted. *Id.* But the forum at issue makes the difference. The city in *Olmer* was regulating expression on a traditional public forum it could not close; here the State is deciding what events it will host inside its own Capitol, where the standard is reasonableness rather than narrow tailoring. *See also Frye v. Kan. City Mo. Police Dep't*, 375 F.3d 785, 791 n.2 (8th Cir. 2004).

Nor was *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011), a forum-analysis case. It thus does not apply here. Unlike *Brown*, which involved a state law prohibiting selling violent video games to minors, *id.* at 789, this case concerns what types of speech the State must permit on its own property. Nothing prohibits the Satanists from holding their event elsewhere. And because *Brown* was not a limited public forum case, it did not address whether such a restriction is reasonable.

DAS's policy also permits Director Campbell to exercise an appropriate amount of discretion. In limited public forums, the government "must be given some discretion in determining what its interests are and how best to further them," and courts respect the government's "expertise in the management" of the forum. *Families Achieving Independence & Respect v. Neb. Dep't of Soc. Servs.*, 111 F.3d 1408, 1421 (8th Cir. 1997) (en banc) (quotation omitted). So the government retains discretion to make "*ad hoc* but reasonable" decisions about the types of speech to permit in the forum. *Victory Through Jesus*, 640 F.3d at 337.

*Minnesota Voters Alliance v. Mansky* does not require a different result. 585 U.S. 1, 16–17 (2018). The ban there applied to every voter entering a polling place and prohibited "political"

apparel, a term the State could not consistently define. *Id.* Section 5.15 of the Capitol Complex's MOU operates differently. It governs whether the State will host an event in its Capitol, it identifies the harm it targets, and it gives obscenity and gratuitous violence as examples. The Supreme Court has never required that access criteria eliminate judgment; *Arkansas Educational Television Commission v. Forbes* upheld an ad hoc and discretionary exclusion from a nonpublic forum, 523 U.S. 666, 680 (1998), and the Eighth Circuit has said the government "must be given some discretion in determining what its interests are and how best to further them." *FAIR*, 111 F.3d at 1421 (quotation omitted).

More, the government's rules are not even required to be in writing. *Powell*, 798 F.3d at 698, 701–03 (upholding "unwritten, informal rules" against signs on sticks and poles at the Iowa State Fair). With respect to the sticks, the Court distinguished *Powell* on the basis that the State Fair's rule against sticks prohibited only certain objects, not certain speakers. Dkt. 52 at 14. But that fails to distinguish this case, which, like *Powell*, is focused on the Krampus costumes, not whether the Satanists may hold an event at all.

*Viewpoint Neutrality*. DAS's denial of the Satanists' proposed Krampus costume event is viewpoint neutral. Viewpoint discrimination occurs only where the government "has targeted particular views," "not merely the subject matter" of the restricted speech. *Viewpoint Neutrality Now! v. Bd. of Regents of Univ. of Minn.*, 109 F.4th 1033, 1040 (8th Cir. 2024) (quotation omitted). And no evidence suggests that Director Campbell denied the Krampus costume event based on the Satanists' viewpoint about Krampus, the holidays, or anything else.

The Department's objection runs to a feature of the proposed event, not to the applicant or its message. Director Campbell testified that an otherwise identical application without the costumes would present no apparent problem. Dkt. 48-1 ¶ 2. That is the opposite of viewpoint

discrimination: the Department approved the Satanists' display in the Capitol in 2023 and offered a memorandum of understanding for a one-day reading of *Paradise Lost*, and it remains willing to host the Satanists' holiday event if proposed along the same terms and following the same rules as every other organization. If any part of the denial swept too broadly, the remedy is an order addressed to that part, not an order compelling the entire event as submitted. And the Satanists point to no relevant comparator events—events by private groups featuring similar costumes to the Krampus costumes at issue here, not merely a holiday event in general—that DAS has approved or otherwise treated differently.

## II. The injunction rests on a single federal claim, and its remedy reaches past that claim into state law.

The Court recognized that the Satanists' state-law claims cannot support this injunction, because the Eleventh Amendment bars a federal court from granting relief against state officials on the basis of state law, whether prospective or retrospective. Dkt. 52 at 20 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)); *see Smith v. Reynolds*, 139 F.4th 631, 637 (8th Cir. 2025). The injunction therefore rests on one claim and one claim only, the Satanists' First Amendment free speech claim, and it stands or falls with that claim on appeal.

The same principle measures the remedy. *Ex parte Young* permits prospective relief to halt an ongoing violation of federal law, and "the scope of injunctive relief is dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). The violation the Court found is the denial of the Satanists' application on a ground the Court held impermissible. An order forbidding the Department from denying the application on that ground gives the Satanists everything the First Amendment entitles them to. The decretal paragraphs go further. They direct the Director to execute a particular instrument prescribed by Iowa Admin. Code r. 11-100.4(4)(*a*)

within seven days, and to file a report on the conditions he imposes within ten. Those provisions administer a state process rather than remedy a federal wrong.

That reading matches what the Court said it was doing. The injunction "leaves those interests intact," and the Department "may impose the same conditions it applies to other indoor events." Dkt. 52 at 22. Staying the seven-day and ten-day parts of the relief reflects that approach. It leaves the Court's merits ruling undisturbed, leaves the Satanists' December 12 date untouched, and leaves the Department to administer its own process once the Court of Appeals has acted.

The Satanists will answer that a federal court remedying a federal violation may order a state official to take an action that state law happens to describe. That is true as far as it goes, and Director Campbell does not contend otherwise. The question is not whether this Court may remedy a First Amendment violation but how far the remedy may run. Where the Court has identified an impermissible ground for denial, an order barring reliance on that ground is complete relief. Compelling the signature of a state instrument on a state timetable, weeks before any appellate court can review the ruling that compels it, adds burden without adding remedy.

**III. The other stay factors strongly favor Director Campbell.**

Absent a stay of the Court's order, Director Campbell will be irreparably harmed. The Court's order requires Director Campbell to approve the Satanists' event application and countersign the memorandum of understanding for the Satanists by Monday, November 9. Dkt. 52 at 23. It further requires Director Campbell to provide a notice identifying any conditions imposed on the event by Thursday, November 12. Dkt. 52 at 24.

The injunction irreparably harms Director Campbell. Once the event is held, it cannot be undone. States have strong interests in protecting children and determining how government property is used. *See, e.g.*, *Ginsberg*, 390 U.S. at 639–40; *Powell*, 798 F.3d at 699. Requiring DAS to permit a Krampus costume event in the Capitol Rotunda irreparably jeopardizes those important

interests. And any time a State is enjoined from carrying out its own lawful policies, "it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)).

Too, irreparable harm should consider the availability of a non-injunctive voluntary remedy. Here, Director Campbell stated that if the event were resubmitted without the costume contest—as the Satanists had at a time suggested doing in 2024, and represented in their briefing that they were willing to do, Dkt. 33 at 4—that there would be a timely resolution of the application and no reason to predict a denial. Then, the event would be able to be held at the Capitol as desired. Availability of non-injunctive relief to hold an event, in a manner that the group itself suggested would satisfy the organization's goals, undermines the irreparable harm.

That is also why the stay factors cannot be assessed without accounting for the appeal itself. If the event proceeds on December 12, the appeal will be, at a minimum, substantially complicated by mootness, and the State will have lost any opportunity for appellate review of a ruling that will govern the Department's handling of this applicant and every other one. A stay preserves the Court of Appeals' ability to decide the question; denial resolves it by default.

Nor does the deadline give Director Campbell enough time to pursue an appeal. A seven-day deadline is not necessary for an event that is still approximately six weeks away. At minimum, this Court should grant an administrative stay of its seven-day and ten-day deadlines to permit Director Campbell time to seek a stay pending appeal from the U.S. Court of Appeals for the Eighth Circuit or to pursue an expedited appeal of the preliminary injunction order. Balancing the equities and the public interest thus weigh more heavily in favor of Director Campbell than the Satanists.

Director Campbell is prepared to accept conditions that protect Plaintiffs' interests. He will consent to expedited briefing in the Court of Appeals, and he will countersign the memorandum of understanding within twenty-four hours if the stay is dissolved by the appellate court or the order is affirmed in time for the December 12 event.

**CONCLUSION**

The Court should stay its order requiring Director Campbell to approve the Satanists' event application pending appeal. At minimum, the Court should stay its seven-day and ten-day deadlines pending appeal or issue an administrative stay pending the Eighth Circuit's disposition of Director Campbell's anticipated motion for a stay pending appeal. We request a decision on the stay by 5:00 p.m. on November 4, to permit time for Director Campbell to seek an administrative stay and stay pending appeal from the Eighth Circuit if this Court denies this stay.

November 3, 2026

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

/s/ *Eric Wessan*
ERIC WESSAN
Solicitor General
LINDSEY BROWNING
Assistant Attorney General, Agency Counsel Division
PATRICK C. VALENCIA
Deputy Solicitor General
CATHERINE FRAPPIER
Assistant Solicitor General
Iowa Department of Justice
Hoover State Office Building
Des Moines, Iowa 50319
(515) 281-5164
eric.wessan@ag.iowa.gov
lindsey.browning@ag.iowa.gov
patrick.valencia@ag.iowa.gov
catherine.frappier@ag.iowa.gov

*ATTORNEYS FOR DEFENDANTS*

Original filed electronically.
Copy electronically served on all parties of record.